844 P.2d 560

**STATE of Arizona, Appellee,**

v.

**Angel Mayora MEDRANO, Appellant.**

**No. CR–88–0303–AP/PC.**

Supreme Court of Arizona,
En Banc.

Dec. 17, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Eric J. Olsson, Asst. Atty. Gen., Phoenix, for appellee.

Daniel F. Davis, Tucson, for appellant.

## OPINION

ZLAKET, Justice.

On the morning of February 1, 1987, Tucson police were called to investigate the death of a woman whose body was discovered at home by her five-year-old daughter, two-year-old son, and a friend's six-year-old daughter. An autopsy established that she died of multiple stab wounds and was approximately eight weeks pregnant. It further revealed evidence of recent sexual activity.

At the time of the victim's death, her husband was in prison, but he received periodic passes to visit his family. He was also allowed to make phone calls from prison. Several days before February 1, he called defendant (appellant), with whom he was acquainted, and asked him to put new tires on his wife's car. Defendant replaced the tires on January 31. At the time, defendant was serving a federal sentence at a halfway house for substance abusers, but he was permitted to leave the premises to work, and had weekend passes allowing him to stay elsewhere overnight.

Several days after the body was discovered, defendant contacted the investigating detective at the request of the victim's husband and reported that he had recently put tires on her car. Subsequently, the police obtained a court order to take blood and saliva samples from defendant. They also questioned him about the clothing he wore on the night of January 31. Defendant gave them some shirts, trousers, and a pair of boots. One shirt was missing a button similar to that discovered in the victim's home.

When a warrant was obtained for defendant's arrest, officers were unable to find him. He was ultimately located in Juarez, Chihuahua, Mexico. On November 24, 1987, Chihuahua Judicial State Police officers, accompanied by an officer of the El Paso, Texas police department, arrested him. Thereafter, defendant told the Juarez deputy police chief that if he was not injured or beaten, he would tell the truth. He then confessed to forcibly raping the victim and killing her after she threatened to tell her husband about the rape. The El Paso officer was present during this confession. Defendant again confessed to the crimes in a written statement to the Mexican authorities.

Later that day, a Pima County Sheriff's detective took custody of defendant at the international border in El Paso. Defendant confessed twice to the detective, once upon being taken into custody, and a second time following the reading of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After they returned to Tucson, he confessed again, and this statement was recorded.

Defendant was charged with first degree murder, kidnapping, sexual assault, and burglary. He was convicted following a jury trial, and was sentenced to death for murder and to 21 years' imprisonment on each of the kidnapping, sexual assault, and burglary convictions. The prison sentences were ordered to run concurrently, but consecutively to the death sentence.

At the sentencing hearing, the state presented evidence that the victim could have lived up to thirty minutes following the stabbings, and testimony regarding defendant's placement in the halfway house. In mitigation, defendant offered no new evidence. He argued, however, that evidence introduced at trial demonstrated that he had a drug problem, that he was under the influence of cocaine the night of the murder, and may have been suffering from cocaine psychosis at the time. Moreover, several letters appended to the pre-sentence report suggested that he was remorseful and could be rehabilitated. The court found two aggravating circumstances pursuant to A.R.S. § 13–703: (1) that the murder was committed in an especially heinous and cruel manner and (2) that defendant committed the offense while in the custody of the federal Bureau of Prisons. It found no mitigating circumstances sufficiently substantial to call for leniency.

After sentencing, defendant moved to vacate the judgment, arguing that newly discovered, exculpatory evidence existed, and that the state had violated his constitutional rights by knowingly suppressing it. The court conducted a hearing, concluded that the offered evidence was neither newly discovered nor exculpatory, and denied the motion. Defendant then appealed.

While this appeal was pending, a petition for post-conviction relief was filed and denied. Review of that denial has been consolidated with this appeal. Defendant raises multiple issues, and we have combined several of these because they are similar. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033 and –4035. For the reasons set forth herein, we affirm defendant's convictions, but remand for resentencing.

### The Mexican Statements

■ Prior to trial, defendant moved to suppress the statements he made in Mexico. At a hearing in the trial court, the deputy chief of police from Juarez, a Mexican police officer, the El Paso police officer, and defendant all testified. Defendant claimed he gave his statements to the Mexican officers "[b]ecause they were beating me." He also said his written statement was taken two or three days after he was picked up by Mexican authorities, rather than on the same day, and that he was deprived of food and water during his detention. The witnesses disputed this. They testified that no promises or threats were made to encourage defendant to talk and no verbal or physical abuse was used against him.

A corrections officer who processed defendant in Tucson on November 25 testified that he observed no marks, scratches, or bruises consistent with defendant's claim of having been physically abused. He said defendant's only physical complaints were a sore throat and ear discomfort. Moreover, a Department of Corrections document, completed during a strip search, indicated no marks or bruises on defendant.

■ The trial court's determination that the statements were freely and voluntarily made will not be disturbed on appeal in the absence of clear and manifest error. *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978). The court here determined that the police officers' testimony was consistent and credible, and that the Juarez confession was voluntary and not the result of duress, threats, or torture. We

have searched the record and discovered nothing that would cause us to alter this finding, despite defendant's claim of physical abuse, torture, and the alleged reputation of the Juarez police for beating prisoners.

■ Because confessions are prima facie involuntary, the court's finding must be supported by a preponderance of the evidence. *State v. Thomas,* 148 Ariz. 225, 227, 714 P.2d 395, 397 (1986). There was more than enough evidence in this case. The trial court properly denied the motion to suppress.

### Other Statements

■ Following jury selection, but before counsel presented opening statements, the court held a *sua sponte* hearing on the voluntariness of defendant's statements to the Pima County and Tucson officers. The court ruled that defendant's initial statement upon transfer was voluntary and not the result of police interrogation. It further found that a second statement was made after defendant was read his rights according to *Miranda,* understood them, and voluntarily agreed to speak to the detective. Defendant made his final statement to officers in Tucson. The trial court also ruled that this confession complied with *Miranda,* was voluntary, and was not the result of any threats, coercion, or promises.

The court heard the testimony of the officers. Having reviewed this testimony, we agree that defendant's statements were properly admitted.

### Defendant's Mental Condition

Defendant makes several arguments relating to his mental condition. His intelligence quotient (IQ) was apparently last measured and recorded as being 75 when he was 15 years old. He is now 36. He claims that his low IQ renders him "mentally retarded" and more prone to suggestion than a person of average intelligence. He argues, therefore, that his confessions were involuntary and his waiver of *Miranda* rights invalid. Also, he asserts that this alleged impairment is a mitigating cir-

cumstance warranting the imposition of a life sentence rather than the death penalty. Finally, he claims trial counsel was ineffective in failing to raise these issues.

■ Defendant's argument that his low IQ invalidated the confessions is without substance. Although below average, an IQ of 75 is higher than that generally thought to be evidence of mental retardation. *See Penry v. Lynaugh,* 492 U.S. 302, 308 n. 1, 109 S.Ct. 2934, 2941 n. 1, 106 L.Ed.2d 256, 271 n. 1 (1989). At worst, it may be considered borderline. *See State v. Bishop,* 162 Ariz. 103, 104, 781 P.2d 581, 582 (1989). Defendant, however, functioned adequately in society for many years prior to his confessions, although he had some problems with drug abuse. He attended high school for three years and worked in his father's tire store as both a laborer and a salesman. There is no showing here that defendant's intelligence was so compromised that his statements should be deemed involuntary.

■ Similarly, we reject the ineffective assistance claim as it relates to the admissibility of defendant's inculpatory statements. Though no evidence on this issue was taken because the trial court erroneously ruled that the question could be raised on direct appeal and therefore was precluded, *State v. Valdez,* 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989), we are able to "clearly determine from the record that the ineffective assistance claim is meritless." *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Given defendant's background, education and work history, and the circumstances surrounding his repeated confessions, counsel's failure to offer a below-average IQ measured almost two decades earlier does not present a colorable claim of ineffective assistance nor is it likely to have affected the outcome of this case. *State v. Borbon,* 146 Ariz. 392, 398, 706 P.2d 718, 724 (1985).

We need not reach defendant's contention that trial counsel was ineffective in failing to present evidence of alleged mental retardation in mitigation at his sentencing hearing. Because we are remanding for a new sentencing hearing on other

grounds, defendant will have an opportunity to introduce evidence of his mental condition. The judge can then determine whether defendant's IQ, combined with any other mitigating evidence that may be presented, warrants leniency. *Cf.* A.R.S. § 13–703(G)(1).

### Especially Cruel or Heinous

■ Defendant asserts that the trial court erred in finding the crime to have been committed in an especially cruel and heinous manner. He also claims that the language of the sentencing statute is unconstitutionally broad and vague. We disagree and note that the United States Supreme Court recently upheld the "especially heinous, cruel or depraved" language of A.R.S. § 13–703(F)(6) against a similar challenge, finding that our interpretation of the phrase "gives meaningful guidance to the sentencer." *Walton v. Arizona*, 497 U.S. 639, 655, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511, 529 (1990).

"Cruelty focuses on the sensations of the victim before death ... and heinousness focuses on society's view of the murder as compared to other murders." *State v. Ortiz*, 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981). Heinousness also concerns "a defendant's state of mind at the time of the offense, as reflected by his words and acts." *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d 602, 620 (1988).

■ Because cruelty is defined in terms of the victim's pain and suffering, *Fulminante*, 161 Ariz. at 254, 778 P.2d at 619, which includes physical as well as mental distress, the victim must be conscious during the offense. If evidence of consciousness is inconclusive, a finding of cruelty cannot be supported. *State v. Amaya–Ruiz*, 166 Ariz. 152, 177, 800 P.2d 1260, 1285 (1990).

Here, the state proved beyond a reasonable doubt that the victim suffered pain and was conscious at the time of the offense. The testimony showed more than 20 stabbing and slashing injuries, at least four of which were serious enough to cause death absent medical intervention. The pathologist testified that there was no physical reason for the victim to have lost consciousness immediately, and further, that she had numerous defensive wounds on her left forearm, the palm and thumb of her right hand, and fingers and thumb of her left hand. He stated that these wounds were consistent with the victim having attempted to grab the knife away from her attacker. The testimony indicated that she could have survived 15 to 30 minutes after she was wounded. The victim knew her two young children and a friend's daughter were in the house while she was being attacked. Additionally, she was aware that she was eight weeks pregnant. This knowledge would likely have contributed significantly to her mental suffering.

In *Amaya–Ruiz*, the court upheld a finding of cruelty because the "defensive wounds on the victim's hands indicate that she struggled to save her life." 166 Ariz. at 177, 800 P.2d at 1285. Such evidence was "sufficient to establish that the victim suffered conscious pain and mental distress...." *Id.* The same is true here.

Defendant cites *State v. Adamson*, 136 Ariz. 250, 266, 665 P.2d 972, 988 (1983), arguing that it was necessary for him to have reasonably foreseen a substantial likelihood that the victim would suffer as a result of his acts. That proposition does not help him here because the victim's suffering was clearly foreseeable. The trial court's finding of cruelty is amply supported by the record.

An especially heinous murder is "hatefully or shockingly evil." *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). This court has identified five factors that may be considered in determining the existence of especially heinous or depraved behavior. They are: (1) the relishing of the murder by the defendant; (2) the infliction of gratuitous violence on the victim beyond that necessary to kill; (3) the mutilation of the victim's body; (4) the senselessness of the crime; and (5) the helplessness of the victim. *See State v. Gretzler*, 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12 (1983). Not all of the forego-

ing elements must be present to support a finding of especially heinous behavior. *Id.*

Here, the numerous stab wounds strongly suggest gratuitous violence. It also appears that the victim was helpless against defendant's attack. Because we have upheld the finding that this killing was especially cruel, however, we need not determine whether it was also especially heinous. The terms "cruel, heinous or depraved" are considered disjunctively. A finding that any one of the three exists constitutes the aggravating circumstance under A.R.S. § 13–703(F)(6). *Amaya–Ruiz,* 166 Ariz. at 177, 800 P.2d at 1285.

### Federal Custody

The trial court erred in finding as aggravation, under A.R.S. § 13–703(F)(7), that defendant committed the murder while in the custody of the United States Bureau of Prisons. The state, with proper candor, concedes this error.

At the time of the murder, defendant was serving a federal sentence at a halfway house, and had reached the fourth of five levels of increasing liberties and privileges. To fall within the terms of A.R.S. § 13–703(F)(7), defendant must have "committed the offense while in the custody of the state department of corrections, a law enforcement agency or county or city jail." This court has held previously that "[t]he legislative intent of this section is to protect the guards and other inmates at such institutions where a defendant is *confined* and to discourage violence by *incarcerated* persons." *State v. Gillies,* 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983) (emphasis added). *Gillies* held that the statute did not apply to an unsecured work furlough. A year later, this court held that it did not apply to a secured work furlough. *State v. Libberton,* 141 Ariz. 132, 138–39, 685 P.2d 1284, 1290–91 (1984). Even though the defendant in *Libberton* was required to return to his facility every day at a specific time, the court found that § 13–703(F)(7) did not apply because he "was not confined when he committed the offense, nor was he incarcerated." *Id.* Defendant's work-release restrictions were even less onerous

than those in *Libberton.* Hence, the aggravating circumstance of § 13–703(F)(7) does not exist here.

The trial court found no mitigating circumstances sufficiently substantial to call for leniency or outweigh the aggravating circumstances. Because one of the two statutory aggravating circumstances found by the trial court must be set aside, and we can only speculate whether the court would have found mitigation sufficient to overcome the single remaining aggravating circumstance, we remand for another hearing and resentencing. *See State v. Schaaf,* 169 Ariz. 323, 335, 819 P.2d 909, 921 (1991) (one of two aggravating circumstances set aside; remanded for resentencing); *State v. Lopez,* 163 Ariz. 108, 116, 786 P.2d 959, 967 (1990) (same); *see also,* Note, *Appellate Review of Death Sentences: An Analysis of the Impact of Clemons v. Mississippi in Arizona,* 34 Ariz.L.Rev. 141 (1992).

### Newly Discovered Evidence

Defendant argues that the trial judge abused his discretion in denying a motion to vacate judgment. The motion asserted that newly discovered exculpatory evidence existed and that the state violated defendant's constitutional rights by knowingly withholding it. The subject of the motion was the recollection of a six-year-old, who was one of the three children in the house on the night of the murder. After conviction, but before sentencing, the child's mother wrote a letter to the judge in which she related her daughter's memory of the night's events. The day after sentencing, a defense investigator conducted a telephone interview with the mother.

Defendant's motion claimed among other things that the girl recalled the presence of "a black guy," an "American guy," and "a female" at the scene with defendant, and that the female watched while the victim was raped and killed. Defendant says this "newly discovered" information regarding the child's observations was material and would have affected the outcome of the case. He asserts that the state, in violation of *Brady v. Maryland,* 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963), failed to inform the defense of this evidence.

Following a hearing, the trial court denied the motion to vacate, finding that (1) the testimony was not newly discovered because the witness was known to the defense and available for interview prior to trial, and (2) the testimony was not exculpatory because it was consistent with defendant's earlier confessions. Newly discovered material must satisfy five requirements:

(1) it must truly be newly discovered, i.e., discovered after the trial; (2) the record must contain facts from which the court can infer due diligence; (3) the evidence must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be evidence that would *probably* change the verdict if a new trial was ordered.

*State v. Jeffers*, 135 Ariz. 404, 426, 661 P.2d 1105, 1127 (1983) (emphasis in original); *see* Rules 24.2(a)(2) and 32.1, Ariz. R.Crim.P., 17 A.R.S. The trial judge's denial of the motion is accorded discretion and the ruling will not be disturbed absent an abuse of that discretion. *State v. Serna*, 167 Ariz. 373, 374, 807 P.2d 1109, 1110 (1991).

We hold that the judge did not abuse his discretion here. "The test for a *Brady* violation is whether the undisclosed material would have created a reasonable doubt had it been presented to the jury." *State v. Dumaine*, 162 Ariz. 392, 405, 783 P.2d 1184, 1197 (1989). The child's testimony would have indicated at most that others were at the scene of the crime, not that defendant did not commit it. Moreover, as noted by the trial judge, defendant never mentioned the presence of other persons in any of his statements to the authorities. Defendant flatly stated, "I did it, I done it, not a day goes by that I don't think about it."

The evidence overwhelmingly pointed to defendant's guilt. The trial court was in the best position to evaluate the potential effect that the child's purported testimony would have had upon the jurors. We find

that the court did not err in denying defendant's motion to vacate judgment.

### Conclusion

We have searched the record for fundamental error and find none. A.R.S. § 13–4035. The judgment of conviction on all charges is affirmed. Because one of two statutory aggravating circumstances must be set aside, the death sentence on the first degree murder conviction is vacated and the cause remanded for a new hearing and resentencing.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.