914 P.2d 225

STATE of Arizona, Appellee,

v.

Angel Mayora MEDRANO, Appellant.

No. CR–94–0207–AP.

Supreme Court of Arizona.

April 2, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Eric J. Olsson, Assistant Attorney General, Phoenix, for Appellee.

Daniel F. Davis, Tucson, for Appellant.

ZLAKET, Vice Chief Justice.

A jury convicted Angel Mayora Medrano of first degree murder, kidnapping, sexual assault, and burglary. The trial court sentenced him to death on the murder conviction, and to terms of imprisonment for his other crimes. On direct appeal, we affirmed all but the death sentence, which was vacated and remanded for reconsideration. *State v. Medrano*, 173 Ariz. 393, 844 P.2d 560 (1992).

Because the trial judge was no longer available, the case had to be reassigned. *See* A.R.S. § 13–703(B). The court thereafter conducted a new sentencing hearing and reimposed the death penalty. This automatic appeal followed, A.R.S. § 13–4031; Rules 26.15 and 31.2(b), Ariz.R.Crim.P., and we have jurisdiction pursuant to Ariz. Const. art 6, § 5(3) and A.R.S. §§ 13–703.01, –4031, and –4033. We affirm.

The facts are set forth in our earlier opinion, so we do not recount them here. *See Medrano*, 173 Ariz. at 394–95, 844 P.2d at 561–62. On remand, the newly assigned judge held several hearings and, as stipulated by the parties, read trial transcripts in lieu of recalling witnesses. Defendant of-

fered additional expert and lay testimony in an attempt to prove that, at the time of the murder, he suffered from a cocaine psychosis which impaired his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." A.R.S. § 13–703(G)(1).

The sentencing court reaffirmed the finding that this killing was especially cruel, thereby establishing the aggravating circumstance referred to in A.R.S. § 13–703(F)(6). *See Medrano,* 173 Ariz. at 397, 844 P.2d at 564. It further found that defendant had not proven by a preponderance of the evidence, either as a statutory or non-statutory mitigating factor, that cocaine intoxication contributed to his conduct on the night of the murder. The judge concluded that even had defendant met this threshold burden, the evidence presented was not "sufficiently mitigating" to call for leniency. As to other possible mitigation, the court determined that while defendant was presently remorseful, his actions immediately following the murder militated against favorable treatment. Moreover, it held that although he had been a model prisoner, this fact was not sufficiently substantial to call for mercy. The court found no other statutory or non-statutory mitigating factors and, upon weighing the evidence, reimposed the death penalty.

■ Medrano argues that the court erred in finding that his use of cocaine was not a mitigating factor. Under A.R.S. § 13–703(G)(1), a defendant must prove "by a preponderance of the evidence that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to prosecution." *State v. Stokley,* 182 Ariz. 505, 520, 898 P.2d 454, 469 (1995), *cert. denied,* 116 S.Ct. 787 (1996). The fact that defendant used cocaine on the night of the murder is not enough. He must prove significant impairment that contributed to the crime. *See State v. Stuard,* 176 Ariz. 589, 608 & n. 12, 863 P.2d 881, 900 & n. 12 (1993). Defendant attempted to show this by expert and lay witness testimony, coupled with evi-

dence of a non-violent character and lack of a motive.

■ Dr. Stephen Pitt, a psychiatrist, testified substantially as follows: (1) defendant has paranoid personality traits but does not suffer from any organic brain disorder; (2) he was cocaine dependent, appeared to have been using the drug for several years prior to and on the night of the murder, and was able to describe incidents of cocaine intoxication consistent with the doctor's own clinical experience; (3) cocaine use often leads to violence, and cocaine intoxication frequently results in delusions and paranoia; and (4) defendant was not malingering. Dr. Pitt, however, was unable to state whether defendant was impaired *at the time of the murder.* The witness could only say that Medrano would have been significantly impaired *if* he was under the influence of cocaine when the crimes were committed. This void in the testimony is crucial. *See State v. Murray,* 184 Ariz. 9, 43, 906 P.2d 542, 576 (1995).

■ Dr. Pitt's testimony contained additional weaknesses. As the judge pointed out, and Pitt acknowledged, the defendant provided most of the information concerning his use of cocaine in the past and on the night of the murder, as well as the drug's effect on him. Because of the obvious motive to fabricate, such self-serving testimony is subject to skepticism and may be deemed insufficient to establish mitigation. *See State v. Bolton,* 182 Ariz. 290, 313, 896 P.2d 830, 853 (1995); *State v. Gerlaugh,* 144 Ariz. 449, 462, 698 P.2d 694, 707 (1985). Even Dr. Pitt admitted that he did not believe defendant's claims regarding the prodigious amounts of cocaine he supposedly used before the murder. It was also clear from the evidence that Medrano's prior experience with the drug could provide the knowledge and information necessary for him to fabricate a plausible story about its effects on the night of his crimes. In evaluating and weighing Dr. Pitt's testimony, the sentencing judge recognized these limitations, as do we.

■ Defendant called several lay witnesses who testified as to his use of cocaine in the past and on the night in question. While historical use may be of some value in showing impairment under A.R.S.

§ 703(G)(1), *see, e.g., State v. Rossi,* 154 Ariz. 245, 249–51, 741 P.2d 1223, 1227–29 (1987), defendant has not presented sufficient evidence in this case to support such a finding. We do not question whether defendant used cocaine on the night of the murder; that has been answered affirmatively. Instead, the primary issue is whether defendant has shown that he was significantly impaired at the time, and that is where the evidence falls short.

Three witnesses testified concerning defendant's condition before and after the killing. None saw him using cocaine. One stated that defendant had been drinking that evening and appeared to be "high" on alcohol and drugs. The witness, however, admitted that he last saw defendant, who was socializing and dancing, more than an hour before the murder. According to expert testimony, this interval would have been sufficient to ameliorate the drug's intense effects. During the same period, defendant drove to a friend's house, staying there for approximately thirty minutes during which no one saw him use drugs. He was then able to drive and find the victim's house.

The second witness, who saw defendant at a convenience store immediately following the murder, stated that he appeared to have been drinking and was "messed up." The third witness observed defendant on the afternoon following the crime. She testified only that he looked "ok" to her and did not appear "hungover."

While the foregoing may support the court's finding that defendant used cocaine at some point preceding the murder, it fails to prove by a preponderance of the evidence that he was significantly impaired at the time of the crime. *Cf. Rossi,* 154 Ariz. at 250–51, 741 P.2d at 1228–29. No one saw defendant ingest or inject any drugs. Moreover, during this entire time he was able to drive around the city, finding a bar, his friend's house, the victim's house, and a store. It thus appears that drug use did not "overwhelm[ ] his ability to control his physical behavior." *State v. Kiles,* 175 Ariz. 358, 375, 857 P.2d 1212, 1229 (1993), *cert. denied,* 510 U.S. 1058, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994).

Defendant also argues that because he is a non-violent person, cocaine must have caused his actions on the night of the murder. As proof of his non-violent character, defendant offered his past criminal record and testimony from friends and family. This evidence, however, did not establish impairment or any causation between drug use and the murder. Experience teaches us that violent acts are not always foreshadowed by other similar behavior.

Medrano concludes his argument by asserting that the absence of any motive, reason, or explanation for his actions, other than cocaine intoxication, proves that impairment caused an inability to conform his conduct to the law or appreciate the wrongfulness of those actions. While lack of a motive or reason for the murder may reinforce a finding that mental impairment was a contributing cause, *Stuard,* 176 Ariz. at 610, 863 P.2d at 902, there is evidence here that defendant killed the victim to prevent her from telling her husband about the rape, as she had threatened to do. *Medrano,* 173 Ariz. at 394, 844 P.2d at 561.

Finally, defendant's actions and words belie his claim of significant impairment. For example, in his statement to the police he was able to describe details of the crime and articulate what he was thinking immediately before and after it. Moreover, following the killing he immediately left the victim's house and disposed of the murder weapon instead of calling for help. The facts, viewed in their entirety, are simply insufficient to show that defendant was impaired to the extent that he could not appreciate the wrongfulness of his conduct. *See Stokley,* 182 Ariz. at 520, 898 P.2d at 469 (disposing of the bodies, burning victims' clothing, and the ability to guide police to the scene and recall events showed no significant impairment); *State v. Wood,* 180 Ariz. 53, 70, 881 P.2d 1158, 1175 (1994), *cert. denied,* 115 S.Ct. 2588 (1995) (responding that he was "the bad guy" when a police radio transmission asked whether "the bad guy" had been apprehended shows defendant was able to appreciate the wrongfulness of his conduct).

■ Defendant's cocaine use also fails as a non-statutory mitigating circumstance. We agree with the sentencing court that the evidence was unpersuasive. *See State v. Ramirez*, 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994), *cert. denied*, 115 S.Ct. 435 (1994) ("[A]lthough [courts] must consider all evidence offered in mitigation, they are not bound to accept such evidence as mitigating.").

■ Finally, defendant suggests that the court improperly relied on personal beliefs in rejecting intoxication as a mitigating factor. During the sentencing hearing, the judge stated:

> People do horrendous things to people not because they are intoxicated by cocaine.

> Not because they have an alcohol problem or learning disabilities or because they've been abused as a child, and obviously there is no evidence of that or any of the other things that we sometimes hear constitutes excuses for people's conduct.

> People do terrible things to people because people have the capacity to do those things. And that's the reason why people get murdered for no reason.

The record as a whole, however, does not support defendant's argument. The sentencing judge specifically acknowledged that Medrano used cocaine on the night of the crime. He ruled that defendant had not met his burden of showing that this use "contributed in any significant way to his action that night." He further stated that even assuming there had been such proof, he would have rejected "the claim that cocaine intoxication, *under these facts,* is sufficiently mitigating to call for leniency." (Emphasis added). Thus, the record clearly shows that defendant's drug use was considered both as a potential statutory and non-statutory mitigating factor. We will not presume that the trial court created a contrary rule of law and silently applied it. *State v. Lopez*, 175 Ariz. 407, 416, 857 P.2d 1261, 1270 (1993), *cert. denied*, 114 S.Ct. 1578 (1994). Judges are presumed to know and follow the law and to consider all relevant sentencing information before them. *Walton v. Arizona*, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *State v. Everhart*, 169 Ariz. 404, 407, 819 P.2d 990, 993 (App.1991).

We have independently reweighed the aggravating and mitigating evidence and affirm the death sentence. This was a particularly cruel murder. We are unable to find mitigation sufficiently substantial to call for leniency.

MOELLER, MARTONE and ROBERT J. CORCORAN (Retired), JJ., concur.

FELDMAN, C.J., did not participate in the determination of this matter.