# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAMUEL VILLEGAS LOPEZ,
                    *Petitioner-Appellant,*

v.

CHARLES L. RYAN,* Director,
Arizona Department of
Corrections,
                    *Respondent-Appellee.*

No. 08-99021

D.C. No.
2:98-CV-00072-
SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
August 11, 2010—San Francisco, California

Filed January 20, 2011

Before: Susan P. Graber, M. Margaret McKeown, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge McKeown

---

*Charles L. Ryan is substituted for his predecessor Dora B. Schriro as
Director of the Arizona Department of Corrections. *See* Fed. R. App. P.
43(c)(2).

**COUNSEL**

Kelley J. Henry, Assistant Federal Public Defender, Capital Habeas Unit, Nashville, Tennessee; Denise Irene Young, Tuscon, Arizona, for the petitioner-appellant.

Susanne Bartlett Blomo, Assistant Attorney General, and Kent Ernest Cattani, Chief Counsel, Capital Litigation Section, Arizona Attorney General's Office, Phoenix, Arizona, for the respondent-appellee.

## OPINION

McKEOWN, Circuit Judge:

We consider here a challenge to the denial of habeas relief from a death sentence. Samuel Villegas Lopez, an Arizona state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus challenging his capital sentence for first-degree murder. Lopez argues that, in violation of his Eighth and Fourteenth Amendment rights, he was denied an individualized sentencing determination because of then-binding Arizona law requiring that mitigating evidence be causally related to the crime; Lopez also argues that his attorney at his resentencing rendered ineffective assistance of counsel by failing to furnish his psychiatric expert with eye-witness testimony and background information necessary to an assessment of pathological intoxication, "a condition, quite rare, in which an individual exhibits sudden and unpredictable behavior very shortly after ingesting a very small amount of alcohol." *State v. Lopez* ("*Lopez II*"), 857 P.2d 1261, 1267 (Ariz. 1993). Finally, Lopez argues that, in violation of the Fourteenth Amendment's Due Process Clause, the government suppressed exculpatory evidence regarding an unrelated sexual assault arrest. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

The record belies Lopez's arguments. The sentencing court expressly indicated that it considered *all* the mitigating evidence at Lopez's sentencing proceedings, and the Arizona Supreme Court independently reviewed the record on appeal. *Id.* at 1264-71. There is no basis to presume that the state court imposed a causal nexus requirement *sub silentio*. Although Arizona has a checkered past on this issue, the Arizona courts did not uniformly impose a causation requirement in capital sentencing cases during the time period in question. The state court examined all the mitigating evidence and found that it did not warrant leniency.

Lopez's ineffective assistance of counsel claim fails as well. Even assuming the district court erred in addressing procedural default *sua sponte*, Lopez is independently barred from seeking relief through his expanded allegations of ineffective assistance of counsel because he did not develop the factual basis for this claim in state court. *See* 28 U.S.C. § 2254(e)(2). Although Lopez raised in state court his narrower claim that counsel failed to provide his expert with eyewitness testimony, he cannot show that counsel's failure caused him prejudice. The trial court found the murder especially heinous, cruel, or depraved, and underscored that he had never seen a case "as bad as this one." There is no "reasonable probability" that the duplicative testimony cited by Lopez would have changed the sentence.

Lopez's *Brady* claim is also without merit. The information in the undisclosed note was not "material" for *Brady* purposes. The note included legal opinions, which are not covered by *Brady* in the first instance, and facts cumulative of information available in previously released police reports. Lopez also cannot demonstrate that had the note been properly disclosed, the result of the sentencing proceeding would have been different. Consequently, under the deference owed to the state court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, we affirm the decision of the district court.

## BACKGROUND

In 1987, Lopez was convicted of first-degree murder, two counts of sexual assault, kidnapping, and burglary for the rape and murder of a fifty-nine-year-old woman, Estefana Holmes.[1] The trial court sentenced him to death on the basis of two

---

[1]The facts of the crime, which are brutal, are summarized by the Arizona Supreme Court at *State v. Lopez*, 786 P.2d 959, 961-62 (Ariz. 1990), and *Lopez II*, 857 P.2d at 1263-64. Because this appeal does not turn on these facts, we do not restate them here.

aggravating circumstances: a prior felony conviction "involving the use or threat of violence on another person," Ariz. Rev. Stat. § 13-703(F)(2) (1992), and the commission of an especially heinous, cruel, or depraved murder, *id.* § 13-703(F)(6) (1992); *see also State v. Lopez* ("*Lopez I*"), 786 P.2d 959, 962 (Ariz. 1990). The Arizona Supreme Court affirmed the convictions, but held that Lopez's prior conviction for resisting arrest did not qualify as a felony offense under Arizona Revised Statutes § 13-703(F)(2) (1992). The court accordingly remanded for resentencing on the murder count. *Lopez I*, 786 P.2d at 965, 967.

Lopez's resentencing was held in 1990. The trial court again sentenced Lopez to death, finding that the murder was committed in an especially cruel, heinous, or depraved manner and that no mitigating circumstances were sufficient to warrant leniency. *Lopez II*, 857 P.2d at 1264. After an independent review of the record, the Arizona Supreme Court affirmed. *Id.* at 1271.

Lopez petitioned for post-conviction relief. The trial court held that "no material issue of fact or law exist[ed] which would be served by any further proceedings" and dismissed the petition. With respect to Lopez's claims of ineffective assistance of counsel, the court found that Lopez failed to show that his counsel's "performance fell below prevailing professional norms" and that there was no "reasonable probability that the result of the trial or sentencing procedures would have been different [but for] counsel's alleged ineffective assistance." The Arizona Supreme Court summarily denied Lopez's petition for review.

Lopez then filed a petition for a writ of habeas corpus in federal district court. The district court denied Lopez's petition. In particular, the district court rejected claim 7 of Lopez's petition, which alleged that the trial judge failed to consider mitigating evidence at sentencing due to Arizona law impermissibly precluding consideration of such evidence

absent a causal nexus to the crime. The district court also found that portions of claim 1(C)—Lopez's ineffective assistance claim challenging counsel's failure to prepare his psychiatric expert at sentencing—substantially altered the claim he had presented in his state post-conviction proceeding and were therefore procedurally barred. The district court denied the exhausted portion of claim 1(C) on the merits. The district court also denied Lopez's *Brady* claim as procedurally defaulted because Lopez failed to present the issue in state court. The district court held that even if the government's failure to disclose the information constituted cause to excuse the procedural default, Lopez failed to establish that the note was prejudicial.

## ANALYSIS

Because Lopez filed his habeas petition in 1998, AEDPA applies. We review de novo a district court's denial of a § 2254 habeas corpus petition. *Luna v. Cambra*, 306 F.3d 954, 959, *as amended*, 311 F.3d 928 (9th Cir. 2002). In conducting review of a state court decision, we "look to the last reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). Under AEDPA, courts may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000). This is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), which "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In addition, a petitioner may be entitled to relief if the state court's factual determination rested on an unreasonable evidentiary foundation. 28 U.S.C. § 2254(d)(2). However, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. *Id.* § 2254(e)(1).

## I. WHETHER LOPEZ WAS DENIED AN INDIVIDUALIZED SENTENCING DETERMINATION (CLAIM 7)

We begin with Lopez's claim that he was denied an individualized sentencing determination because the state court ignored relevant mitigating evidence. As a preliminary matter, we note that the trial judge—at both Lopez's original sentencing in 1987 and resentencing in 1990—expressly stated that he considered *all* the mitigating evidence and found that it did not warrant leniency. The Arizona Supreme Court also affirmed the sentencing court's analysis after an independent review of the record. *Lopez I*, 786 P.2d at 966; *Lopez II*, 857 P.2d at 1264-68, 1270-71. Nonetheless, Lopez argues that, at the time of his sentencing, Arizona law unconstitutionally barred consideration of mitigating evidence that was not causally related to the crime. Because the state court presumably adhered to this rule, Lopez argues, we should infer that it did not consider all the mitigating evidence and thus denied him an individualized sentencing in violation of his Eighth and Fourteenth Amendment rights. *See Lockett v. Ohio*, 438 U.S. 586, 608 (1978) (holding that Eighth and Fourteenth Amendments require the individualized consideration of all mitigating factors in capital cases); *Tennard v. Dretke*, 542 U.S. 274, 287 (2004) (same).

**[1]** Lopez's claim is at odds with the law and the evidence. As we explained in *Schad v. Ryan*, "[a]bsent a clear indication in the record that the state court applied the wrong standard, we cannot assume the courts violated . . . constitutional mandates." 606 F.3d 1022, 1047 (9th Cir. 2010) (per curiam), petition for cert. filed, 79 U.S.L.W. 3129 (U.S. Aug. 27, 2010) (No. 10-305). *See also Bell v. Cone*, 543 U.S. 447, 455 (2005) (per curiam) (explaining that "[f]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation"). Here, there is no indication that the state court applied an impermissible requirement of a causal nexus between mitigating evidence and the crime. Indeed, the state

court said the opposite—i.e., that it considered all the mitigating evidence on an independent review of the record and found that it did not warrant the exercise of leniency. As the Arizona Supreme Court forcefully stated:

> The trial judge in this case was not misled. . . . In his concluding portion of the special verdict he reiterated that "the prosecution and the defendant have been permitted to rebut any information received at the hearing, including information presented at the trial, and were given fair *opportunity to present argument as to the adequacy* of the information to establish the existence . . . *of any mitigating circumstances whether listed in A.R.S. § 13-703(G) or not.*" (emphasis added.)

*Lopez II*, 857 P.2d at 1270.

Contrary to Lopez's argument, we have no reason to presume that a tacit causation rule underpinned the state court's decision. Our recent decision in *Schad* makes this clear. In *Schad*, the petitioner similarly argued that, contrary to the Supreme Court's dictates in *Lockett* and *Tennard*, "the [Arizona] state courts did not consider the evidence of his troubled childhood because they unconstitutionally required a 'nexus' between his childhood abuse and his commission of [the] murder." 606 F.3d at 1045. Reviewing Arizona case law, we explained that, "[b]efore *Tennard* was decided, Arizona courts recognized a nexus test, similar to that rejected in *Tennard*, to preclude consideration of evidence of childhood abuse unless the abuse bore a causal connection to the crime of conviction." *Id.* at 1045-46. After *Tennard*, the Arizona Supreme Court "clarified that the nexus test affects only the weight of mitigating evidence, not its admissibility." *Id.* at 1046 (citing *State v. Newell*, 132 P.3d 833, 849 (Ariz. 2006)).[2]

---

[2]In his opening brief, Lopez argues that the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), marks the watershed in the Ari-

However, the fact that the Arizona courts clearly did, at times, employ (or "recognize[ ]") a causal nexus requirement does not mean that they *always* did so. Indeed, in *Schad* itself, we concluded that the Arizona courts did not apply a causation requirement when considering the defendant's mitigating evidence even though he was sentenced to death before *Tennard* was decided. *Id.* at 1046-47.

**[2]** Our review of the case law confirms Arizona's unsettled past with respect to this issue. Some cases decided prior to *Tennard* applied a causal nexus requirement in an impermissible manner.[3] Other cases, however, properly looked to causal nexus only as a factor in determining the weight or significance of mitigating evidence.[4] *See Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982) (holding that "[t]he sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence"). Indeed, in several cases, the Arizona Supreme Court expressly took mitigating evidence into consideration when reducing a death sentence to life, regardless of any causal nexus to the crime.[5]

_____

zona courts' treatment of mitigating evidence. However, *Ring* has no bearing on whether Arizona courts applied an impermissible causation requirement in capital sentencing cases, and Lopez understandably backed away from this position in his reply brief.

[3]*See, e.g.*, *Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008) (per curiam), cert. denied, 130 S. Ct. 379 (2009); *State v. Hoskins*, 14 P.3d 997, 1021-22 (Ariz. 2000); *State v. Kayer*, 984 P.2d 31, 46 (Ariz. 1999); *State v. Sharp*, 973 P.2d 1171,1182 (Ariz. 1999); *State v. Rienhardt*, 951 P.2d 454, 466-67 (Ariz. 1997); *State v. Murray*, 906 P.2d 542, 573 (Ariz. 1995); *State v. Walden*, 905 P.2d 974, 999 (Ariz. 1995); *State v. Ross*, 886 P.2d 1354, 1363 (Ariz. 1994).

[4]*See, e.g.*, *State v. Bocharski*, 189 P.3d 403, 426 (Ariz. 2008); *State v. Pandeli*, 161 P.3d 557, 575 (Ariz. 2007); *State v. Newell*, 132 P.3d 833, 849 (Ariz. 2006); *State v. Djerf*, 959 P.2d 1274, 1289 (Ariz. 1998); *State v. Mann*, 934 P.2d 784, 795 (Ariz. 1997); *State v. Towery*, 920 P.2d 290, 310-11 (Ariz. 1996); *State v. Medrano*, 914 P.2d 225, 229 (Ariz. 1996).

[5]*See, e.g.*, *State v. Trostle*, 951 P.2d 869, 888 (Ariz. 1997) (reducing sentence in light of various mitigating factors, including abusive child-

**[3]** In light of this backdrop, which highlights a range of treatment of the nexus issue, there is no reason to infer unconstitutional reasoning from judicial silence. Rather, we must look to what the record actually says. *See Schad*, 606 F.3d at 1046-47. Because the state court made clear that it considered all the mitigating evidence and found it wanting, Lopez's claim fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 1C)

### A. SECTION 2254(e)(2)

We next turn to Lopez's ineffective assistance claim. At his resentencing in 1990, Lopez unsuccessfully sought to establish a mitigating factor of pathological intoxication based on the evaluation of his psychiatric expert, Dr. Otto Bendheim. Lopez attributes this failure to ineffective assistance of counsel. In his petition for post-conviction relief ("PCR petition"), Lopez specifically complained that counsel failed to provide Dr. Bendheim with the pretrial statements and trial testimony of Pauline Rodriguez and Yodilia Sabori describing his behavior on the night of the murder. This omission constituted ineffective assistance, Lopez argued, because Rodriguez and Sabori's statements were "stronger evidence of pathological intoxication than any items previously submitted to Dr. Bendheim." The trial court declined to hold an evidentiary hearing and dismissed the petition. Lopez raised the same claim in his petition for review in the Arizona Supreme Court, which also ordered dismissal.

---

hood); *State v. Rockwell*, 775 P.2d 1069, 1079 (Ariz. 1989) (concluding that "defendant's character and background, together with his age at the time of the murder and the unique circumstances of his conviction, cause us to conclude that a sentence of death is inappropriate"); *Bocharski*, 189 P.3d at 426 (reducing sentence to life, in part, because of defendant's difficult family background).

Lopez went on to broaden his ineffective assistance claim in his amended federal habeas petition. Coupled with his claim regarding the two witnesses, Lopez newly alleged that counsel failed to furnish Dr. Bendheim with a broad range of biographical data and family and social history that were necessary for a proper diagnosis. This information included the abandonment of Lopez's family by his father, his family's extreme poverty, Lopez's history of substance abuse and exposure to toxic substances, and his low education level. Lopez argued that an investigation into his personal history was necessary for Dr. Bendheim to establish a base line for his cognitive functioning, compare his functioning when intoxicated with the base line, determine if intoxication exacerbated any underlying psychiatric problems, assess him for any addictive disease, determine any neurologic deficits and the effects of intoxication on such deficits, and evaluate any other influences on his behavior or thought processes during the murder.[6]

The state initially conceded that Lopez's ineffective assistance claim was "properly exhausted." Nearly eight years later, however, the state sought to retract its concession, contending that Lopez's ineffective assistance claim went "far beyond" what was presented to the state court. The district court agreed with the state and dismissed claim 1C as procedurally defaulted.

The parties strongly contest whether the state waived procedural default and whether the district court erred in reaching this issue *sua sponte*. We need not and do not address this issue, however, because we affirm the dismissal of Lopez's claim on an alternate ground. Even assuming that the district

---

[6]Lopez denies that he broadened his claim in federal court. Rather, he argues that he fairly presented his claim to state court by alleging that counsel failed to provide Dr. Bendheim "all of the obviously relevant information" that was "necessary . . . to render a complete diagnosis." This argument fails as it is clear specifically from the face of the PCR petition that, by "relevant evidence," Lopez meant the pretrial statements and trial testimony of Rodriguez and Sabori.

court should not have reached the issue of procedural default, Lopez failed to present any of the evidence in support of his expanded claim in state court. Thus, he is separately barred from seeking relief under 28 U.S.C. § 2254(e)(2).

[4] Section 2254(e)(2) imposes a high bar on expanding the record to include evidence that was not presented in state court. The section provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). These "same restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing." *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (per curiam); *accord Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005). The parties here chiefly dispute whether the statute's trigger—namely, the

petitioner's "fail[ure] to develop the factual basis of a claim in State court proceedings"—applies to Lopez.[7]

A petitioner "fail[s] to develop the factual basis of a claim in State court proceedings" under the opening clause of § 2254(e)(2) where "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432. Diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435.

**[5]** Lopez was not diligent in developing his claim. In his post-conviction proceedings, Lopez did not allege that his attorney at sentencing was ineffective in failing to investigate Lopez's personal history and to furnish Dr. Bendheim with those facts, but rather complained only that counsel failed to provide the doctor with the statements and testimony of Rodriguez and Sabori. The problem, then, is not simply that Lopez failed to develop the factual underpinnings of his claim —Lopez failed to present this claim altogether.

**[6]** Although state law required Lopez to attach "[a]ffidavits, records, or other evidence currently available to [him] supporting the allegations" to his PCR petition, Ariz. R. Crim. P. 32.5, Lopez submitted none of the contested evidence regarding his childhood, mental health, or family and social history. Rather, consistent with his narrow ineffective assistance claim, the only evidence that Lopez attached to his PCR petition relating to claim 1C consisted of the pretrial interviews of Rodriguez and Sabori, and an affidavit of Dr. Bendheim attesting that these "new materials [made his] earlier diagnosis of pathological intoxication more probable than

---

[7]Lopez argues that the state waived this argument by failing to raise it in district court. However, in its merits brief to the district court, the state expressly argued that Lopez did not satisfy § 2254(e)(2).

previously expressed." Notably, Lopez does not contend that he lacked access to the information from his family members regarding family history even though he could presumably obtain it without court order and with minimal expense. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (holding that the petitioner was not diligent where he failed to present affidavits from family members and did not show that they could not be obtained absent an order for discovery or a hearing). Because Lopez was not diligent in presenting the new evidence at issue, no evidentiary hearing is required. Section 2254(e)(2) applies.[8] In addition, Lopez cannot meet the requirements of § 2254(e)(2)(A)—that is, show that he makes a claim based on a new, retroactively applicable rule of constitutional law or "a factual predicate that could not have been previously discovered through the exercise of due diligence." Thus, he is barred from seeking relief. *See Cooper-Smith*, 397 F.3d at 1241-42.

### B.   ORIGINAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

[7] Because Lopez cannot rely on evidence that he failed to present in state court, we will only determine whether Lopez established his original ineffective assistance claim—namely, his claim that counsel performed deficiently and prejudicially by failing to furnish Dr. Bendheim with the statements and testimony of Rodriguez and Sabori. To prevail on an ineffective assistance claim, Lopez must show that counsel's performance was objectively deficient and that the deficient performance caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams*, 529

---

[8]Lopez's claims that he was diligent in his state proceedings are unavailing. Lopez argues that the new evidence at issue merely "supplement[s] the facts supporting the claim [he] made in state court and would have been uncovered had the state court granted an evidentiary hearing." But given the narrow nature of his ineffective assistance claim, the state court was justified in finding that "no material issue of fact or law exists which would be served by any further proceedings" and dismissing his petition without a hearing.

U.S. at 391 (holding that *Strickland* is the "clearly established" federal law governing habeas claims of ineffectiveness of counsel under AEDPA). We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed." *Strickland*, 466 U.S. at 697.

To prepare his evaluation for the 1987 sentencing, Dr. Bendheim interviewed Lopez and reviewed police reports regarding the murder; prior charges and arrests; a statement by Raymond Hernandez, Pauline Rodriguez's husband; and descriptions of the crime scene. On this basis, Dr. Bendheim "hypothesi[zed]" that Lopez suffered from pathological intoxication, which he described as a condition that causes individuals who consume small amounts of alcohol to react in an "unexpected, unpredictable" manner that is "characterized frequently by extreme violence." In particular, Dr. Bendheim noted a statement by Hernandez that Lopez was "mild and meek" when sober but "very mean" when drunk, along with information from defense counsel that other character witnesses described similar behavior patterns on Lopez's part. Although Lopez told Dr. Bendheim that he was not intoxicated on the night of the murder, the doctor did not believe him because other evidence indicated to the contrary.

[8] At resentencing, Lopez's new counsel provided Dr. Bendheim with additional criminal records detailing other incidents in which Lopez had engaged in criminal and violent behavior—in particular, the pre-sentence investigation relating to his conviction for resisting arrest and a police report regarding an alleged sexual assault in 1986. Dr. Bendheim found that this new information corroborated his initial assessment. Based on the totality of the evidence, the doctor "speculate[d] that with a great preponderance of probability[,] not certainty, but probability" that but for Lopez's intoxica

tion on the night of the crime, "the murder would not have occurred." However, Dr. Bendheim underlined that he could offer only a "tentative diagnosis" of pathological intoxication, not a diagnosis with "medical certainty," and that his diagnosis was "to a very large degree . . . speculative." This uncertainty was due to the fact that he was not present at the time of the crime to observe Lopez's behavior and that Lopez himself "could not confirm that he undergoes a significant personality change when intoxicated."

[9] In rebuttal, the state presented the testimony of Dr. Robert Dean, a psychiatrist and expert on alcoholism. Dr. Dean never met Lopez and had experienced only one encounter with a person presumed to suffer from pathological intoxication during his residency. However, Dr. Dean had read considerable amounts of material on the disorder and reviewed the documents on which Dr. Bendheim relied in order to assess Dr. Bendheim's evaluation.

[10] Dr. Dean rejected Dr. Bendheim's diagnosis. Dr. Dean stated that pathological intoxication was uncommon, and he was not aware of any cases in his twenty-five years of psychiatric practice. He also noted that Lopez lacked the predisposing conditions to the disorder, such as advanced age and organic pathology in the brain. Focusing on a police report describing Lopez's behavior in the alleged sexual assault of Cecilia Rodriguez,[9] Dr. Dean concluded that Lopez did not suffer a consistent, pathological response to minimal quantities of alcohol and that he did not show a pathological response to alcohol within the window of time that is typical of the disorder. Dr. Dean also specifically reviewed the pretrial statements and trial testimony of Rodriguez and Sabori and testified that those materials did not change his opinion.

---

[9]Cecilia Rodriguez is a different person than Pauline Rodriguez, whom we refer to throughout this opinion as "Rodriguez."

At the resentencing, the judge found that Lopez failed to show pathological intoxication as a mitigating factor. In the court's view, Dr. Bendheim's testimony did not rise to any level of medical certainty, but rather rested upon a 'hypothesis' or 'speculation.' " In addition, "[t]he state presented evidence to rebut the 'hypothesis' and 'speculation.' " Lopez "failed to meet his burden of proof of establishing this mitigating factor by a preponderance of the evidence," and thus the "mitigating circumstance [did] not exist." The Arizona Supreme Court affirmed after an independent review of the record. *Lopez II*, 857 P.2d at 1267-68.

In his post-conviction proceedings, Lopez argued that sentencing counsel was ineffective for failing to furnish Dr. Bendheim with the eyewitness statements and testimony of Rodriguez and Sabori regarding Lopez's behavior on the night of the murder so that the doctor could make a more definitive diagnosis. Sabori attested in particular that she met Lopez in a neighborhood park on the night of the murder and talked with him from around 8 p.m. to 11:15 p.m. Sabori then went home to Rodriguez's apartment, where she was staying. About ten or fifteen minutes later, Lopez appeared at her front door drunk. Lopez asked Sabori if she got high, and she told him no. At that point, Lopez disappeared down an alley for a few minutes; when he returned he was shaking, unsteady, and belligerent. When Sabori tried to go into the house, Lopez closed the door on her hand to prevent her from leaving. Ultimately, with the help of Rodriguez, Sabori broke free and went inside.

Rodriguez generally corroborated Sabori's statement. Rodriguez "believe[d] [Lopez] was on something" that night and observed that "he wasn't[,] you know[,] hi[m]self." Rodriguez stated that Lopez came to the house around three times a week when he was drunk. When Lopez was sober, he was "quiet" and "real nice," but he would "get[ ] really heavy on people" when drunk. The evening of the murder he was belligerent and yelled obscenities at Rodriguez.

In his new affidavit submitted with the PCR petition, Dr. Bendheim stated that, in light of the statements of Rodriquez and Sabori, he could "now make a more certain diagnosis of pathological intoxication." Nonetheless, the state court denied Lopez's ineffective assistance claim, finding that there was no "reasonable probability that the result of the . . . sentencing procedures would have been different because of [this] alleged ineffective assistance."

**[11]** The state court's holding does not constitute an unreasonable application of *Strickland*. Lopez cannot show a "reasonable probability that, absent the errors [Lopez alleges], the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. Here, the statements of Rodriguez and Sabori were largely duplicative of other information provided to Dr. Bendheim. For example, one of the documents given to Dr. Bendheim for the 1987 sentencing proceeding was a police report containing Rodriguez's statements that Lopez was "drunk or high" several hours before the murder, and that he tried to force his way into her apartment. Lopez's counsel also provided Dr. Bendheim with the statement from Raymond Hernandez that Lopez was "very mean" when drunk and "mild and meek" when sober, and Lopez's counsel told Dr. Bendheim of other witnesses who claimed that Lopez became "like another person when he drinks." Lopez's counsel at the 1990 resentencing similarly provided Dr. Bendheim with further evidence of Lopez's violent behavior when drunk, which served to corroborate Dr. Bendheim's opinion. Dr. Bendheim underlined, through his testimony at sentencing, that his assessment of Lopez was only "tentative," lacked "medical certainty," and was "to a very large degree . . . speculative." It is true that Dr. Bendheim later testified that, had he reviewed the additional testimony of Rodriguez and Sabori, his original diagnosis would have been "more probable" and "more certain." But we are not convinced that his "more probable" diagnosis would have changed the outcome of the sentencing proceeding. The new evidence would have

done little to refute Dr. Dean's contrary assessment that Lopez did not suffer from pathological intoxication. As Dr. Dean pointed out, pathological intoxication is an extremely rare condition, Lopez did not exhibit any of the predisposing factors, and the evidence from his criminal file indicated that he did not react pathologically to alcohol or show reactions within the typical time-frame after drinking. After Dr. Dean examined Rodriguez and Sabori's statements, he found nothing in them to alter his opinion, and those statements were otherwise available in the record for the court's consideration.

[12] Finally, the sentencing court made a strong finding as to the especially heinous, cruel, or depraved nature of the murder, remarking that in his years on the bench he had "never seen [a first-degree murder case] as bad as this one," and the Arizona Supreme Court affirmed in similarly forceful terms. *See Lopez II*, 857 P.2d at 1264-66.

[13] Ultimately, the absence of Rodriguez and Sabori's testimony from Dr. Bendheim's assessment did not affect the balance of the aggravating and mitigating factors. Lopez has not shown a "reasonable possibility" that, but for counsel's alleged errors, the sentencer would have concluded that Lopez did not deserve a death sentence. *See Strickland*, 466 U.S. at 695.

## III. SUPPRESSION OF BRADY MATERIAL (CLAIM 10)

As a final matter, we address Lopez's *Brady* claim with respect to an unrelated sexual assault.[10] Less than a week after Holmes' death, Lopez was arrested for the sexual assault of Cecilia Rodriguez. *See supra* p. 1185. Although Lopez's trial counsel received police reports documenting the incident, the government failed to provide Lopez with a handwritten note

---

[10]On September 16, 2010, we granted Lopez a certificate of appealability with respect to this claim and directed the government to file a responsive brief.

that was later discovered in a police file. The note, whose author is unknown, opines that there was an insufficient factual basis to support a conviction of Lopez for the assault and that the victim was not credible. Specifically, the note states that there were "no findings by a physician indicating sexual assault"; that the victim's claims "were not corroborated by [the] physician's report"; and that the victim had a previous consensual sexual relationship with Lopez. Lopez was never charged with a crime as a result of the incident. However, the note was not made available to Lopez until his habeas claims were pending in federal court, long after the state court proceedings.

**[14]** Lopez, who introduced evidence of the sexual assault to corroborate his pathological intoxication mitigation defense, now claims that the note, which undermines the sexual assault allegation, would have been favorable to his defense. He argues that the government's failure to disclose the note violated his constitutional due process rights under *Brady*, 373 U.S. at 87. The district court concluded that because Lopez failed to present the issue in state court and no state remedy remained available, the claim was "technically exhausted but procedurally defaulted," but that Lopez had shown no prejudice to overcome the default. Lopez argues on appeal that there is cause and prejudice to excuse the procedural default and that habeas relief must be granted. We conclude that there was no constitutional violation under *Brady*; it likewise follows that Lopez is unable to establish prejudice to excuse the procedural default.

**[15]** Under *Brady*, the prosecution must disclose exculpatory evidence to a defendant if it is "material" either to guilt or to punishment. 373 U.S. at 87. However, "[f]ailure to disclose information only constitutes a Brady violation if the requested information is 'material' to the defense." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995). Materiality rests on "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The handwritten note fails the materiality test in several respects. To begin, the note offers no *new* factual evidence. "Evidence that is merely cumulative is not material." *United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988). The note included underlying facts regarding the alleged sexual assault and legal opinions of the unknown author. The facts laid out in the note were merely cumulative of the facts contained in the police reports, which were available to Lopez and submitted by Lopez's counsel at the 1990 resentencing. Accordingly, this information was not "material" for *Brady* purposes. *See Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005) (new evidence that "very nearly replicated evidence already admitted" into evidence is not "material" under *Brady*); *United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995) (same). To the extent the note included legal opinions, we have previously held that "a prosecutor's opinions and mental impressions of the case are not discoverable under Brady unless they contain underlying exculpatory facts." *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). Applying the same rationale here, we conclude that the legal opinions contained in the note do not constitute *Brady* material required to be provided to Lopez.

**[16]** Lopez also fails to demonstrate that the note was "material" in that "had the [note] been disclosed, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Lopez argues that the note provided "important exculpatory evidence which would have rebutted non-statutory aggravating evidence relied upon by the prosecution and considered by the trial court as outlined above." However, Arizona does not recognize non-statutory aggravating evidence, *see* Ariz. Rev. Stat. § 13-703(F), and there is no indication that the trial court considered such evidence at Lopez's sentencing. As Lopez acknowledges, the trial court found only one statutory aggravating factor— that Holmes' murder was committed in

a cruel, heinous, or depraved manner. *Lopez II*, 857 P.2d at 1264. Lopez identifies no evidence indicating that the trial court considered the unrelated sexual assault in finding this aggravating factor.

Nor has Lopez, who relied on the existence of the alleged assault to corroborate his mitigation defense, demonstrated how this *exculpatory* evidence as to the unrelated assault would have influenced the state court's findings as to mitigation. Indeed, to the extent that the note would have influenced the sentencing proceeding, it would have undermined Lopez's foundation of pathological intoxication.

**[17]** We conclude that the handwritten note is not "material" for *Brady* purposes. The facts contained in the note were cumulative of information previously available in the police reports and Lopez has not remotely shown that "had the evidence been disclosed, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Accordingly, the district court appropriately denied relief on Lopez's *Brady* claim.

**AFFIRMED.**