BEA, Circuit Judge,
dissenting, with whom KOZINSKI, GOULD, TALLMAN, and CALLAHAN, Circuit Judges, join:
A state cannot impose the death penalty unless the sentencer has considered all evidence submitted as to the defendant’s condition, character, and background. Eddings v. Oklahoma, 455 U.S. 104, 113-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (explaining that a sentencer may not “refuse to consider, as a matter of law, any relevant mitigating evidence”). As a result, defendants so sentenced usually and legitimately proffer mitigation evidence provoking sympathy in the hope it will persuade the sentencer to grant leniency and impose a life sentence instead of the death penalty. Here, James McKinney submitted evidence of his squalid, horrid childhood and expert testimony that, as a result of that childhood, he developed Post-Traumatic Stress Disorder (“PTSD”). He urged his PTSD called for mercy for two reasons. First, he argued his PTSD affected his mental capacity “to appreciate the wrongfulness of his conduct” at the time of the-murders. This is a statutory .mitigation factor under Arizona law.[1] Second, he argued his childhood and childhood-caused *828 PTSD justified leniency, separate from any effect it may have had on his mental state at the time of the murders. That second argument fits under Arizona’s nonstatutory catchall that requires sentencers to consider all proffered mitigation evidence.[2] McKinney admits the sentencing judge, Judge Sheldon, considered his first argument. But McKinney contends Judge Sheldon did not consider the mitigating value of his PTSD for leniency purposes regardless its effect on him at the time of the murders.
McKinney pressed this same claim before the Arizona Supreme Court on direct appeal from the sentence Judge Sheldon imposed. That court correctly stated what Eddings requires: “[T]he trial judge must consider any aspect of [a defendant’s] character or record and any circumstance of the offense relevant to determining whether a sentence less severe than the death penalty is appropriate.”[3] It then rejected McKinney’s argument that Judge Sheldon had failed to consider his PTSD separate from its effect on McKinney’s mental capacity during the murders: “[T]he record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood, specifically the diagnosis of post-traumatic stress disorder.” [4] That conclusion makes sense given Judge Sheldon expressly stated at McKinney’s sentencing:
I have considered [McKinney’s arguments] at length, and after considering all of the mitigating circumstances, the mitigating evidence that was presented by the defense in this case as against the aggravating circumstances, and other matters which clearly are not set forth in the statute which should be considered by a court, I have determined ... that the mitigating circumstances simply are not sufficiently substantial to call for leniency under all of the facts of this case.
(Emphasis added.)
Our review of McKinney’s claim must proceed differently than it did in the Arizona courts on direct appeal. The Supreme Court has told us we must presume “state courts know and follow the law.”[5] And, in the Eddings context, “[w]e must assume that the trial judge considered all [the] evidence before passing sentence.”[6] This appeal could be resolved against McKinney, without the benefit of those presumptions, simply based on the above quotations from the record. This appeal presents even fewer problems to decide under the standard provided by the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), which prescribes “ ‘a difficult to meet’ and ‘highly deferential standard for evaluating state-court rulings, [and] which demands state-court decisions be given the benefit of the doubt.’ ”[7] Yet the majority still somehow concludes that, under the standard of review prescribed *829 by AEDPA, there was Eddings error in this case.
The majority starts by incorrectly summarizing the Arizona Supreme Court’s Ed-dings jurisprudence between 1989 and 2005 as constituting continuous and recurrent Eddings error.[8] Not so at all, as our own decisions have repeatedly recognized.[9] Based on its incorrect summary of the Arizona decisions[10] and a paean to stare decisis, the majority then rejects our precedent [11] and concludes that we should never afford the Arizona Supreme Court the presumption that “state courts know and follow the law” with respect to any of that court’s Eddings cases.[12]- Rather, the majority creates a new and contrary presumption — that the Arizona courts did not know or follow Eddings between 1989 and 2005 — and finds this presumption is not rebutted even where the Arizona courts have clearly complied with Eddings’s mandate.[13] Of course, this process is quite contrary to the deferential standard of review the Supreme Court has told us to use.
But the majority does not stop there. When the majority turns to the record in this case, it misreads it. The majority first suggests that when Judge Sheldon stated there was no evidence that McKinney’s PTSD “in any way affected his conduct in this case,” he applied an unconstitutional nexus test to exclude the PTSD from consideration altogether.[14] Not so. At that portion of the hearing, Judge Sheldon was dealing with, and rejecting, McKinney’s own argument that his PTSD impaired his ability “to appreciate the wrongfulness of his conduct” at the time of the murders. Next, the majority states the Arizona Supreme Court “recited its unconstitutional causal nexus test” when it decided McKinney’s appeal.[15] The court did no such thing; if it did state an unconstitutional nexus test, this case would be simple. Finally, the majority ignores the Arizona Supreme Court’s careful articulation of Eddings’s requirements and focuses instead on a single case citation in the Arizona opinion.[16] None of this is permissible under AEDPA.
In short, the majority ignores Supreme Court precedent,[17] implicitly overrules our own precedent,[18] replaces AEDPA’s defer *830 ential standard of review of state-court decisions with an impermissible de novo standard, and misstates the record when applying that standard. Also quite troubling, the majority wrongly smears the Arizona Supreme Court and calls into question every single death sentence imposed in Arizona between 1989 and 2005 and our cases which have denied habeas relief as to those sentences. Finally, the majority brushes by the facts of McKinney’s gruesome crimes to find that the error the majority has manufactured was indeed prejudicial to the outcome of the sentencing, rather than harmless, in contravention of the prejudice standard stated in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).
I respectfully dissent.
I.
This case should come down to a review of only a few pages of the transcript from McKinney’s sentencing, and a few pages from the Arizona Supreme Court’s decision affirming his sentence. State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1225-27, 1233-34 (1996). A brief discussion of the sentencing proceeding and Arizona’s statute governing the application of the death penalty may help analyze these few pages.
A. The Statutory Scheme and McKinney’s Sentencing Arguments
Arizona law separates mitigating evidence into two categories, statutory and nonstatut'ory. There are five statutory mitigating factors under Arizona’s sentencing statute: mental capacity, duress, minor participation, reasonable foreseeability, and age. Ariz.Rev.Stat. § 13 — 751(G)(1)— (5).[19] The nonstatutory category is a catchall that requires the sentencer to consider “any factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death,” id. § 13-751(G), “including any aspect of the defendant’s character or any circumstances of the offense relevant to determining whether a capital sentence is too severe.” State v. White, 194 Ariz. 344, 982 P.2d 819, 824 (1999).
McKinney’s sentencing memorandum included 11 separate parts; each argued for leniency for different reasons. McKinney’s two primary arguments in support of leniency were based on his troubled childhood and his claimed resulting PTSD diagnosis. McKinney relied on his PTSD to make two arguments in support of leniency. First, in Part VIII of his sentencing memorandum, McKinney argued his PTSD warranted leniency based on the statutory mitigation factor § 13 — 751(G)(1) (“Mental Capacity Factor”). The Mental Capacity Factor requires the court to consider whether “[t]he defendant’s capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.” Ariz.Rev.Stat. § 13-751(G)(1). McKinney argued his PTSD diminished his capacity to appreciate the wrongfulness of his conduct during the murders of Christene Mertens and Jim McClain. It must be kept in mind that it was McKinney who claimed a causal nexus between his PTSD and his commission of *831 the murders. So the sentencing judge can hardly be faulted for considering this as “nexus” evidence.
Second, in Parts I and VII of his sentencing memorandum, McKinney argued his PTSD warranted leniency separate from any effect that PTSD may have had on him at the time of the murders. This argument did not assert McKinney’s PTSD played a role in the two murders. Thus, it did not fall under the statutory Mental Capacity Factor, or any other specific statutory mitigation factor. See id. § 13-751(G) (duress, minor participation, reasonable foreseeability, and age). Instead, it fit under the nonstatutory catchall, quoted above.
B. The PTSD Testimony
McKinney called Diana McKinney, his sister, Susan Sesate, his aunt, and Dr. Mickey McMahon, a psychologist, to testify. The state called Dr. Steven Gray in rebuttal to Dr. McMahon’s testimony. McKinney’s sister and aunt testified to the conditions of McKinney’s squalid, harsh childhood. Dr. McMahon opined McKinney’s childhood caused McKinney to develop PTSD.
Dr. McMahon testified that McKinney was a “loner” and not the type of criminal who would engage in “thrill-seeking behavior,” such as committing a crime for the sake of the excitement the crime provided. Instead, McKinney’s PTSD would lead him to avoid confrontations and stressful situations; and McKinney “tries to respond to [stress] by withdrawing.” Dr. McMahon agreed that McKinney would leave a stressful situation to avoid a confrontation if he could do so.
Dr. McMahon testified there was a “high likelihood” that McKinney’s PTSD was triggered during his confrontation with his first victim, Christene Mertens, and McKinney’s mental capacity was diminished as a result. With respect to the McClain robbery and murder, Dr. McMahon admitted, “I don’t have enough facts to say that [McKinney] was suffering from diminished capacity.” Dr. McMahon testified that the murder of McClain in his sleep “would be the exact opposite of what I would expect from Mr. McKinney.” Those acts were consistent with someone who seeks out stressful situations rather than avoids them; it was a contra-indication to the presence of PTSD.
The prosecution’s expert, Dr. Gray, did not diagnose McKinney with PTSD. He did not “think there’s enough evidence or diagnostic materials or work that’s been done to conclusively diagnose him as having [PTSD].” His tentative diagnosis was that McKinney has antisocial personality disorder. He explained that “[m]ost antisocial people have [a] major disturbance in thinking, not to be confused with schizophrenia or psychosis. They tend to, for example blame others for their situation.” Dr. Gray noted antisocial people typically avoid being a victim. Instead, “they want to be an offender, be in control, be in charge, be powerful even though the manner in which they do that is self-defeating, unhealthy and is abusive, harmful to others.” Which is why “people with antisocial personality have a long history of conflict with the law.”
At the conclusion of the evidence, trial judge Sheldon credited defense expert Dr. McMahon’s testimony that McKinney had PTSD over Dr. Gray’s contrary opinion. He found that Dr. McMahon’s opinion was entitled “to more weight” than Dr. Gray’s testimony. He then adjourned for three days to consider the evidence before ruling on McKinney’s sentence.
C. Judge Sheldon Considers McKinney’s PTSD Evidence
Judge Sheldon imposed his sentence on July 23, 1993. At the outset of that hear *832 ing, he found the prosecution proved two aggravating factors for the Mertens murder: In the language of the statute, McKinney (1) “committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value”; and (2) “committed the offense in an especially heinous, cruel or depraved manner.” See Ariz.Rev.Stat. § 13-751(F)(5)-(6). No one disputes the solid footing in the record evidence for finding both of these aggravating factors. McKinney and Hedlund killed to get Mertens’s money. And before dispatching Mertens with a bullet to her head, McKinney and Hedlund savagely injured her. Judge Sheldon also found the government proved two aggravating factors for the murder of Jim McClain: (1) the pecuniary-gain aggravating factor; and (2) that McKinney was “convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable,” i.e., the earlier Mertens murder. See Ariz.Rev.Stat. § 13-751(F)(1), (5). Again, no one disputes the basis for these findings. McKinney and Hedlund killed McClain to get McClain’s money, and McKinney was convicted for the earlier murder of Mertens.
Judge Sheldon then addressed McKinney’s mitigation evidence. Judge Sheldon started by crediting Dr. McMahon’s testimony twice and accepting Dr. McMahon’s PTSD diagnosis as true. Judge Sheldon then addressed McKinney’s nexus argument for leniency under the statutory Mental Capacity Factor, id. § 13-751(G)(1), which McKinney had cited in his sentencing memorandum. Judge Sheldon stated there was no evidence McKinney’s PTSD “in any way significantly impaired Mr. McKinney’s conduct.” He repeated that conclusion a second time moments later, where he concluded there was no evidence that McKinney’s PTSD “in any way affected his conduct in this case.”[20] Judge Sheldon reached that conclusion based on McKinney’s planning of the burglaries and statements McKinney made to witnesses before the burglaries that he would shoot a resident if he encountered one during the burglaries. Judge Sheldon noted Dr. McMahon testified that a person suffering from PTSD would be withdrawn and would “avoid contacts which would either exacerbate or recreate the trauma that would bring on this type of stress from childhood.” But McKinney sought out stressful situations by planning and executing the burglaries that led to the two murders. Judge Sheldon concluded leniency was not available based upon the statutory Mental Capacity Factor, and repeated a third time his belief that the PTSD did not “significantly impair[ ]” McKinney’s conduct.
This analysis of PTSD under the statutory mitigation factors did not end Judge Sheldon’s consideration of McKinney’s PTSD for purposes of mitigation. Judge Sheldon next transitioned to address “the other mitigating factors raised by the defense in their memorandum.”[21] Those other mitigation factors included, among others, McKinney’s Part VII argument for leniency due to his difficult childhood and *833 his psychological history, including his PTSD. After finding McKinney’s childhood did not support leniency, Judge Sheldon concluded: “With respect to the other matters set out in the [defendant’s sentencing] memorandum, I have considered them at length, and after considering all of the mitigating circumstances ... I have determined that ... the mitigating circumstances simply are not sufficiently substantial to call for a leniency under all of the facts of this case.” (Emphasis added.) The court then sentenced McKinney to death for both first-degree murder convictions.
A week later, Judge Sheldon sentenced McKinney’s co-defendant, Michael Hed-lund, to death.
D. McKinney’s Direct Appeal to the Arizona Supreme Court
McKinney appealed his sentence. See McKinney, 917 P.2d at 1232-34. The Arizona Supreme Court addressed both McKinney’s and Hedlund’s sentences together in the same opinion, taking Hed-lund’s first. As is common practice when a court addresses similar claims in the same opinion, the Arizona Supreme Court more fully articulated the legal standard applicable to both when it first addressed Hedlund’s arguments. Id. at 1225-27. For Hedlund’s Eddings error argument, the court detailed what Eddings requires:
Hedlund correctly observes that the trial judge must consider any aspect of his character or record and any circumstances of the offense relevant to determining whether a sentence less severe than death is appropriate. In considering such material, however, the judge has broad discretion to evaluate expert mental health evidence and to determine the weight and credibility given to it.
Id. at 1226. The court then rejected Hed-lund’s argument that Judge Sheldon failed to consider his mitigation evidence. Id. at 1226-27.
The court reached the same conclusion for McKinney’s Eddings argument: “Here again, the record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood, specifically the diagnosis of post-traumatic stress disorder.” Id. at 1234. The court concluded: “The record clearly shows that the judge considered McKinney’s abusive childhood and its impact on his behavior and ability to conform his conduct and found it insufficiently mitigating to call for leniency.” Id. The court held Judge Sheldon did not err and affirmed McKinney’s sentence. Id.
II.
A. What Eddings v. Oklahoma Requires and What It Prohibits
Eddings’s command is simple. In Ed-dings, the trial judge stated that “in following the law” he could not “consider the fact of this young man’s violent background” in determining whether to sentence him to death. Eddings, 455 U.S. at 112-13, 102 S.Ct. 869. The Supreme Court held the trial judge’s refusal to consider the evidence was unconstitutional under the Eighth Amendment. Id. at 113— 15, 102 S.Ct. 869. “Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.” Id. at 113-14, 102 S.Ct. 869. Yet the Court made clear that the sentencer “may determine the weight to be given relevant mitigating evidence. But [it] may not give it no weight by excluding such evidence from [its] consideration.” Id. at 114-15, 102 S.Ct. 869. In later cases, the Supreme Court clarified that the sentencer *834 cannot refuse to consider evidence because that evidence does not bear a causal nexus to the crime. See, e.g., Tennard v. Dretke, 542 U.S. 274, 287, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). We have recognized that the sentencer may consider a “causal nexus ... as a factor in determining the weight or significance of mitigating evidence.” Lopez v. Ryan, 630 F.3d 1198, 1204 (9th Cir.2011) (citing Eddings, 455 U.S. at 114-15,102 S.Ct. 869).[22]
B. The “Last Reasoned Decision”
AEDPA governs when we review a state’s determination whether a prisoner’s rights under the federal Constitution have been violated. See 28 U.S.C. § 2254. Under AEDPA, our review is confined to the “last reasoned decision” of the state courts. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir.2005). The “last reasoned decision” is the most recent “adjudication on the merits” that “finally resolve[s] the rights of the parties on the substance of the claim, rather than on the basis of a procedural or other rule precluding state review of the merits.” Barker, 423 F.3d at 1092.
I agree with the majority that the Arizona Supreme Court’s opinion on direct review is the “last reasoned decision.” Op. at 819. I do not agree with the majority’s understanding of that opinion. The majority repeatedly refers to the Arizona Supreme Court’s review of McKinney’s sentence as a “de novo review.” See, e.g., id. at 802, 803-04, 804-05, 809-10, 819, 820, 826-27. The Arizona Supreme Court does independently review each death sentence. See Ariz.Rev.Stat. § 13-755. But the way it does its “independent review” is first to conduct a normal appellate review to determine whether the trial court made any legal errors when it imposed the death sentence. See id. § 13-755(a)-(b). We owe this finding double deference under AEDPA. See, e.g., Lopez v. Schriro, 491 F.3d 1029, 1037-38 & n. 2 (9th Cir.2007). After the Arizona Supreme Court reviews for legal errors, it then decides whether the death sentence is-justified. See Ariz. Rev.Stat. § 13 — 755(a)—(b); State v. Roseberry, 237 Ariz. 507, 353 P.3d 847, 849-50 (2015) (“[T]his Court reviews the entire record and independently considers whether a capital sentence is not only legally correct, but also appropriate.”). Based on its own incorrect notion of what “independent review” means in Arizona practice, the majority converts this appellate review of death sentences into a new sentencing determination and treats McKinney’s trial-court sentencing hearing as irrelevant, except insofar as the Arizona Supreme Court accepted Judge Sheldon’s factual findings as its own. Op. at 810, 819-21.
Although at times we construe an appellate court’s decision and a trial court’s decision together as the “last reasoned decision,” we do so only when the appellate *835 court adopts the trial court’s decision. See, e.g., Barker, 423 F.3d at 1093. That is not what occurred here. The Arizona Supreme Court did not, as the majority posits, accept any of Judge Sheldon’s factual findings as its own. See op. at 810, 819-21; McKinney, 917 P.2d at 1233-34. The court merely reviewed McKinney’s argument that Judge Sheldon failed to consider McKinney’s mitigation evidence and concluded, “On this record there was no error.” McKinney, 917 P.2d at 1234. It also “independently reviewed the record,” as it was required to do under Arizona law, and affirmed McKinney’s death sentence. Id.; see also id. at 1225 (explaining the Arizona procedure for reviewing death sentences on direct appeal). For that reason, the Arizona Supreme Court’s opinion is the “last reasoned decision.” See Towery v. Ryan, 673 F.3d 933, 944 n. 3 (9th Cir.2012) (per curiam) (refusing the petitioner’s suggestion to “review the decisions of the sentencing court and the [Arizona Supreme Court] together”).[23]
C. AEDPA’s Deferential Review
The standard by which federal courts must review state-court decisions under AEDPA is well known, if not always well followed. See 28 U.S.C. § 2254(d). Under § 2254(d)(1), a federal court can issue a writ of habeas corpus only if the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” Id. § 2254(d)(1). Under § 2254(d)(2), a federal court can issue the writ only if the state court’s decision “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Id. § 2254(d)(2).
■ We apply the “contrary to” prong of § 2254(d)(1) where, as here, the parties dispute whether a state appellate court applied the correct standard. See Woodford v. Visciotti, 537 U.S. 19, 22-24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (applying § 2254(d)(1) where the parties disputed whether the California Supreme Court applied the correct standard under Strickland). In this case, I apply § 2254(d)(1) when analyzing whether the Arizona Supreme Court used an unconstitutional nexus test in its review of McKinney’s sentence.
The question whether a trial judge has considered all the proffered mitigation evidence is a factual question, not a legal one. See Lopez, 491 F.3d at 1037-38 & n. 2. And a state appellate court’s finding that the trial judge considered all the proffered mitigation evidence is itself a factual finding. See id.; see also Parker v. Dugger, 498 U.S. 308, 320, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). As a result, I apply § 2254(d)(2) to the Arizona Supreme Court’s finding that Judge Sheldon considered all of McKinney’s mitigation evidence, which can be overturned only if it was “unreasonable.” See Towery, 673 F.3d at 945 n. 4; Lopez, 491 F.3d at 1037-38 & n. 2. Judge Sheldon’s sentencing colloquy is relevant only for making that determination.[24]
*836 III.
I begin by evaluating McKinney’s appeal under the correct standard.[25] That standard requires that we first determine whether the Arizona Supreme Court’s decision was “contrary to ... clearly established Federal law” under § 2254(d)(1). Applied here, we must determine whether the Arizona Supreme Court treated McKinney’s PTSD as irrelevant to consider whether leniency was justified, because McKinney did not show the PTSD affected his conduct at the time of the murders. If the Arizona Supreme Court treated the PTSD as mitigation evidence relevant to whether leniency was justified, we must then determine whether the Arizona Supreme Court’s conclusion that Judge Sheldon fully considered McKinney’s PTSD was an “unreasonable determination of fact” under § 2254(d)(2).
A. The Correct Analysis of the Arizona Supreme Court’s Decision
1.
This case primarily boils down to what standard the Arizona Supreme Court applied when addressing McKinney’s Ed-dings claim. “A decision is contrary to clearly established law if the state court ‘applies a rule that contradicts the governing law set forth in [Supreme Court] cases.’ ” Lafler v. Cooper, — U.S. —, 132 S.Ct. 1376, 1390, 182 L.Ed.2d 398 (2012) (citation omitted); Frantz v. Hazey, 533 F.3d 724, 734 (9th Cir.2008) (en banc) (“[U]se of the wrong legal rule or framework ... constitute^] error under the ‘contrary to’ prong of § 2254(d)(1).”). The state argues the Arizona Supreme Court correctly applied Eddings; McKinney argues the Arizona Supreme Court applied a “nexus” standard to exclude his PTSD from consideration contrary to Eddings.
The Supreme Court’s decision in Visciotti governs our analysis under the “contrary to” prong of § 2254(d)(1). See Visciotti 537 U.S. at 22-24, 123 S.Ct. 357. In Visciotti the petitioner argued the California Supreme Court applied the wrong standard for what constitutes prejudicial error under Strickland. Id. To prove such prejudice under Strickland, “the defendant must establish a ‘reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Id. at 22, 123 S.Ct. 357 (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In its opinion, the California Supreme Court began its Strickland analysis by twice stating the correct standard: “reasonable probability.” Id. at 22-23, 123 S.Ct. 357. The opinion then misstated the “prejudice” standard four times in other portions of the opinion because it used the term “probable” instead of “reasonably probable.” Id. at 23, 123 S.Ct. 357.[26] Relying on the misstatements, we found the California Supreme Court applied the incorrect standard. Id. at 23-24. 123 S.Ct. 357. The decision was therefore “contrary to” Strickland under § 2254(d)(1). Id.
*837 In a per curiam opinion, and without the benefit of merits briefing or oral argument, the Supreme Court reversed our judgment. Id. at 22-24, 123 S.Ct. 357. The Court chided us for mischaracterizing the California Supreme Court’s decision, “which expressed and applied the proper standard for evaluating prejudice.” Id. at 22, 123 S.Ct. 357. Our “readiness to attribute error [was] inconsistent with the presumption that state courts know and follow the law.” Id. at 24, 123 S.Ct. 357 (citing Parker, 498 U.S. at 314-16, 111 S.Ct. 731 (1991)). Our “readiness to attribute error” was “also incompatible with § 2254(d)’s ‘highly deferential standard for evaluating state-court rulings,’ which demands that state-court .decisions be given the benefit of the doubt.” Id. (quoting Lindh v. Murphy, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).
Visciotti’s teaching is not complicated. When we review a state-appellate-court decision under the “contrary to” prong of § 2254(d)(1), we must presume the state court knew and followed federal constitutional law. Id. And we must give the court the “benefit of the doubt.” Id. For that reason, we must construe any ambiguity in language in the state court’s favor. As applied to Eddings cases, when the state court identifies and articulates the correct Eddings standard, we must presume it applied that standard. That presumption can be rebutted by any action by the state court that shows the state court excluded the defendant’s mitigation evidence as a matter of law. The easiest way to rebut the presumption would be an express statement from the state court that it was excluding evidence from consideration as a matter of law, such as the trial judge’s statements in Eddings itself. See Ed-dings, 455 U.S. at 112-13, 102 S.Ct. 869. However, that is not the only way to rebut the presumption. If the state court’s reasoning shows, without any ambiguity, that it did not consider relevant mitigation evidence at all, that would suffice to rebut the presumption. Any less deferential review rejects the presumption'that Visciotti requires. This is the analysis that should replace our “clear indication” test for Ed-dings cases. See, e.g., Schad v. Ryan, 671 F.3d 708, 724 (9th Cir.2011) (“Absent a clear indication in the record that the state court applied the wrong standard, we cannot assume the courts violated Eddings’s constitutional mandates.”).
Applying Visciotti to this case is quick work. At no point did the Arizona Supreme Court state either that Judge Sheldon had excluded McKinney’s PTSD evidence as a matter of law, or that it would have been permissible to do so, under Arizona’s nonstatutory catchall because the PTSD bore no nexus to the crime. Nor did the Arizona Supreme Court treat that evidence as if it had no weight as a matter of law. That should be the- end of the matter and of McKinney’s appeal. All the majority and McKinney do is speculate that, regardless what it stated, the Arizona Supreme Court applied a nexus test to conclude the PTSD evidence was irrelevant under the nonstatutory catchall. Vis-ciotti prohibits such speculation.
But let us make a closer inquiry anyway to quell any doubts raised by the majority’s flank attack on the Arizona Supreme Court’s decision. That court first outlined the Eddings standard when, in its combined review of Hedlund’s and McKinney’s sentences, it stated:
Hedlund correctly observes that the trial judge must consider any aspect of his character or record and any circumstance of the offense relevant to determining whether a sentence less severe than the death penalty is appropriate. In considering such material, however, the judge has broad discretion to evalu *838 ate expert mental health evidence and to determine the weight and credibility given to it.
McKinney, 917 P.2d at 1226 (emphasis added). This is what Eddings requires and all that it requires. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (“[T]he Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer.”). The Arizona Supreme Court then confirmed it knew the difference between excluding mitigation evidence altogether as a matter of law (Eddings error) and giving mitigation evidence little or no weight as a matter of fact (permissible under Eddings and Harris). See McKinney, 917 P.2d at 1231 (noting that Judge Sheldon “did not improperly exclude mitigating evidence at sentencing and the mitigating evidence is not of great weight”).
The Arizona Supreme Court then found Judge Sheldon complied with Eddings in McKinney’s case:
Here again, the record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood, specifically the diagnosis of post-traumatic stress disorder (PTSD).
Id. at 1234 (emphasis added). The court continued:
[A] difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant’s ability to perceive, comprehend, or control his actions!-
Id. (emphasis added). In other words, when a difficult background does affect the “defendant’s ability to perceive, comprehend, or control his actions,” it has “substantial mitigating weight.” When there is no such effect, the evidence does not necessarily have substantial mitigating weight, but it can have such weight. That is up to the sentencer’s discretion.
The best McKinney can do is point to the Arizona Supreme Court’s citation to State v. Ross, 180 Ariz. 598, 886 P.2d 1354 (1994), which is a case where that court did indeed misapply Eddings. But that single citation is insufficient to rebut the presumption that the court knew and followed Eddings. In Visciotti, the California Supreme Court misstated the Strickland prejudice standard four times after stating it correctly. Visciotti, 537 U.S. at 22T24, 123 S.Ct. 357. If actually misstating the standard four times- is insufficient to rebut the presumption that the state court applied the correct standard (Visciotti), then the lesser sin of citing a suspect case cannot overcome the court’s correct statement of the law and the presumption it applied that law (McKinney). That is why we have previously held a single citation cannot be a basis for finding Eddings error on AEDPA review. See Towery, 673 F.3d at 946. Indeed, a prior en banc panel of this court rejected this exact argument in the less deferential, pre-AEDPA context. See Jeffers v. Lewis, 38 F.3d 411, 415 (9th Cir.1994) (en banc). As a result, we must conclude the Arizona Supreme Court’s decision was not “contrary to ... clearly established Federal law.”
2.
I turn to the Arizona Supreme Court’s conclusion that Judge Sheldon fully considered McKinney’s PTSD. That is a conclusion we review to determine whether it was an “unreasonable determination of fact” under § 2254(d)(2). See Lopez, 491 F.3d at 1037-38 & n. 2. We are barred from characterizing the Arizona Supreme Court’s “factual determination[ ] as unreasonable ‘merely because we would have *839 reached a different conclusion in the first instance.’ ” Brumfield v. Cain, — U.S. —, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015) (citation omitted). “Instead, § 2254(d)(2) requires that we accord the state ... court substantial deference.” Id. “State-court factual findings ... are presumed correct; the petitioner has the burden of rebutting the presumption by ‘clear and convincing evidence.’ ” Davis v. Ayala, — U.S.—, 135 S.Ct. 2187, 2199-2200, 192 L.Ed.2d 323 (2015) (citation omitted). If “ ‘reasonable minds reviewing the record might disagree’ about the finding in question, ‘on habeas review fhat does not suffice to supersede the [state court’s] determination.’ ” Brumfield, 135 S.Ct. at 2277 (citation omitted).
It requires no strenuous effort to conclude that Judge Sheldon fully considered McKinney’s PTSD. First, unlike the trial court judge in Biddings, at no point did Judge Sheldon state he was excluding the PTSD from consideration under the nonstatutory catchall as a matter of law because the PTSD had no effect on McKinney’s criminal conduct. Quite the opposite. Before sentencing McKinney, Judge Sheldon stated he “considered] all of the mitigating circumstances.” That alone should preclude us from concluding the Arizona Supreme Court’s finding was an “unreasonable determination of fact.”
But even were we to indulge in de novo review of the record, that review confirms that Judge Sheldon fully considered McKinney’s PTSD. Judge Sheldon’s discussion of McKinney’s mitigation arguments proceeded in three steps. First, at pages 26 to 28 of the sentencing transcript, Judge Sheldon discussed the mitigation evidence McKinney proffered, specifically citing McKinney’s sentencing memorandum by date. Second, at pages 28 to 31, Judge Sheldon addressed four statutory mitigating factors in Ariz.Rev.Stat. § 13-751(G), including McKinney’s argument, under § 13-751(G)(1), that his PTSD affected his mental state at the time of the murders. Third, at pages 31 to 32, Judge Sheldon addressed the nonstatutory mitigating factors McKinney raised in his sentencing memorandum, including McKinney’s argument for leniency under the nonstatutory catchall due to his PTSD separate from its effect on his mental state at the time of the murders.
That chronology proceeded as follows:
•At the conclusion of the evidentiary hearing, Judge Sheldon credited Dr. McMahon’s testimony: “I do believe that for purposes of this hearing that some evidence of [McKinney’s] possible manifestations of Post-traumatic Stress Syndrome were demonstrated by the testimony of Dr. McMahon. And I’ll just — I don’t know that I find it an overwhelmingly persuasive mitigating factor, but I will tell you that I’m, more inclined to believe that than Dr. Gray’s determination that there is not enough evidence to assume that there is Post-traumatic Stress Syndrome.” Judge Sheldon later stated Dr. McMahon’s PTSD diagnosis was entitled “to more weight under the circumstances of this case.”
Judge Sheldon began his discussion of McKinney’s mitigation evidence at the sentencing hearing by stating, “I have considered all the exhibits admitted into evidence, Numbers 1 through 8.” At least one of those exhibits dealt with PTSD and its effects.[27]
*840 •Judge Sheldon again credited defense witness Dr. McMahon’s testimony: “[I]t appears, and I believe that the statements made [about McKinney’s childhood], both by Dr. McMahon• and made by the witnesses at the time they were testifying, were truthful, and I did take them into consideration in this case.” (Emphasis added.)
Judge Sheldon then credited Dr. McMahon’s testimony that McKinney’s childhood led him to develop PTSD: “For whatever reasons, some of which I believe were due to the traumatic circumstances that he grew up in and the circumstances which were testified to by the witnesses during the mitigation hearing, the circumstances of child abuse, which I accept as true for purposes of this hearing, I think manifest the causal factors linked to Post-traumatic Stress Syndrome as testified to by Dr. McMahon.”
After discussing an exhibit the defense proffered, Judge Sheldon turned to the statutory mitigation factors under Ariz. Rev.Stat. § 13-751(G). He first addressed McKinney’s primary argument, contained in Part VIII of his sentencing memorandum, that McKinney was entitled to leniency under the statutory Mental Capacity Factor, § 13-751(G)(1) because his PTSD affected him at the time of the murders:
Judge Sheldon began: “[I]t appeared to me that Dr. McMahon did not at any time suggest in his testimony nor did I find any credible evidence to suggest that, even if the diagnosis of Post-traumatic Stress Syndrome were accurate in Mr. McKinney’s case, that in any way significantly impaired Mr. McKinney’s conduct.” Judge Sheldon repeated that conclusion a page later: “[A]nd it appeared to me that based upon all these circumstances that there simply was no substantial reason to believe that even if the trauma that Mr. McKinney had suffered in childhood had contributed to an appropriate diagnosis of Post-traumatic Stress Syndrome that it in any way affected his conduct in this case.”
Judge Sheldon explained why he believed the PTSD did not affect McKinney’s state of mind at the time of the murders. Namely, McKinney’s pre-planning of the burglaries and homicides was inconsistent with Dr. McMahon’s testimony that PTSD would cause McKinney to avoid confrontation rather than seek it out.
Judge Sheldon then concluded leniency was not available under the Mental Capacity Factor, § 13-751(G)(1), again repeating his belief that the PTSD did not “significantly impair[]” McKinney at the time of the murders.
Judge Sheldon then addressed, and rejected, the other statutory mitigation factors.
Finally, Judge Sheldon turned to McKinney’s nonstatutory mitigation factors. McKinney’s sentencing memorandum argued in two separate parts (Parts I and VII) that McKinney was entitled to leniency for his PTSD separate from any effect the PTSD had on his state of mind during the murders. Part I of the memorandum was titled: “Evidence of a Difficult Family History: Eddings v. Oklahoma, supra.” In Part I, McKinney mentioned the childhood-caused PTSD as a mitigating factor along with his difficult childhood. The title’s citation to Eddings v. Oklahoma brought front and center the constitutional requirement that the PTSD diagnosis be considered without restriction. Part VII of the memorandum was titled: “Psychological History.” There, McKinney explained Dr. McMahon’s PTSD diagnosis and stated: “Defendant submits that his psychological *841 background is mitigating.” Judge Sheldon made clear he considered both of these sections:
Judge Sheldon started: “With respect to the other mitigating factors raised by the defense in their memorandum, defendant’s mitigating memorandum received by this Court July 15th, 1993, I have had an opportunity to review that memorandum.” Judge Sheldon then rejected the Part I argument that McKinney’s childhood warranted leniency.
Judge Sheldon then addressed the remaining arguments McKinney made, which included Part VIPs argument that McKinney’s PTSD warranted leniency: “With respect to the other matters set out in the memorandum, I have considered them at length, and after considering all of the mitigating circumstances, the mitigating evidence that was presented by the defense in this case as against the aggravating circumstances, and other matters which clearly are not set forth in the statute which should be considered by the court, I have determined that ... the mitigating circumstances simply are not sufficiently substantial to call for leniency under all of the facts of this case.” (Emphasis added.)[28]
As the sentencing transcript shows, Judge Sheldon considered “at length” McKinney’s sentencing memorandum’s arguments that his PTSD diagnosis warranted leniency without any reference to PTSD’s possible effect on his mental capacity during the murders. And Judge Sheldon found the PTSD did not carry enough mitigating weight “to call for leniency.” When combined with Judge Sheldon’s prior crediting of Dr. McMahon’s testimony as to the PTSD diagnosis, the only conclusion to reach is that Judge Sheldon complied with Eddings. Even were there an ambiguity in Judge Sheldon’s statements (there isn’t), the Supreme Court has admonished that “[w]e must assume that the trial judge considered all this evidence before passing sentence. For one thing, he said he did.” Parker, 498 U.S. at 314, 111 S.Ct. 731.[29]
In short, the Arizona Supreme Court’s conclusion that Judge Sheldon properly considered all of McKinney’s mitigation evidence was not an “unreasonable determination of fact.” In fact, it was the correct conclusion.[30]
*842 B. The Majority’s Flawed Analysis
Perhaps because the Arizona Supreme Court was explicit in its compliance with Eddings, the majority takes a very different course to conclude McKinney’s death sentence is invalid. The majority opinion proceeds in essentially two steps. First, it falsely paints the Arizona Supreme Court as a habitual violator of Eddings between 1989 and 2005. Based on that false assertion, the majority concludes the Visciotti presumption is automatically rebutted in this case and every other Eddings case coming out of Arizona within that time period. Op. at 803-04. In its place, the majority suggests the presumption is flipped and engages in a sort of de novo review to see if Arizona has rebutted the presumption it violated Eddings, with the burden of proof as to Eddings compliance on the Arizona courts. Id. at 819-21, 823-26. Second, the majority relies on a misreading of Judge Sheldon’s sentencing colloquy and the Arizona Supreme Court opinion to conclude the Arizona Supreme Court violated Eddings despite that court’s correct articulation of Eddings’s requirements. Id. I take each mistake in turn.
1.
The majority begins by acknowledging we are required to presume state courts know and follow the law. Id. at 803-04. But it concludes we should not afford the presumption in any Arizona Eddings case because the Arizona Supreme Court — like common-law courts generally — adheres to the principle of stare decisis and “applied its unconstitutional causal nexus test consistently throughout ... the relevant period.” Id. at 803-04, 826-27. Though such a presumption is “appropriate in the great majority of habeas cases,” the majority posits, “the presumption is rebutted here where we know, based on its own words, that the Arizona Supreme Court did not ‘know and follow’ federal law.” Id. at 804. In other words, the majority relies on other Arizona Supreme Court cases to conclude the Arizona Supreme Court in this case is afforded no deference under AED-PA. Even if AEDPA permitted this type of analysis (it doesn’t, and the majority cites no case in support of it), the analysis is based on a false premise. The Arizona courts did not consistently misapply Ed-dings.
The majority asserts that Arizona eases show a uniform error between 1989 and 2005. Id. at 812-18, 823-27. To see that assertion is wrong, one need look no further than a case the Arizona Supreme Court decided a mere six weeks after it decided McKinney’s appeal and squarely within that time period. See State v. Towery, 186 Ariz. 168, 920 P.2d 290 (1996). There, the court cited to Eddings and its progeny for the proposition that “[t]he sentencer ... must consider the defendant’s upbringing if proffered but is not required to give it significant mitigating weight. How much weight should be given proffered mitigating factors is a matter within the sound discretion of the sentencing judge.” Id. at 311 (applying Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (emphasis added)). The Arizona Supreme Court rejected defendant Towery’s argument that the trial judge failed to comply with Ed- *843 dings when he considered Towery’s background and “gave it little or no mitigating value.” Id. And, on habeas review of Tow-ery, we concluded the Arizona Supreme Court complied with Eddings when it affirmed Towery’s sentence. Towery, 673 F.3d at 944-46. In another case decided the same year as McKinney’s appeal, the Arizona Supreme Court found the defendant’s diagnosis of antisocial personality disorder to be a mitigating circumstance even though it did not find a nexus between that mental illness and the defendant’s crime. State v. Thornton, 187 Ariz. 325, 929 P.2d 676, 685-86 (1996) (“We agree with the trial court that Thornton’s childhood, dysfunctional family, and personality disorder are mitigating factors.”).
But Towery and Thornton are no outliers. A case decided a year before McKinney’s appeal was decided, see State v. Gonzales, 181 Ariz. 502, 892 P.2d 838, 851 (1995) (applying Eddings), and a case decided a year after it, see State v. Trostle, 191 Ariz. 4, 951 P.2d 869, 885-86 (1997) (applying Lockett, Eddings’s precursor), confirm the Arizona Supreme Court knew how to apply Eddings correctly. Moreover, the Arizona Supreme Court relied on non-nexus mitigation evidence to vacate death sentences during the majority’s chosen time period, a fact our court has already recognized. See Lopez, 630 F.3d at 1203-04 (collecting cases for the proposition that “the Arizona Supreme Court expressly took mitigating evidence into consideration when reducing a death sentence to life, regardless of any causal nexus to the crime ” (emphasis added)).
Still, the majority would have us believe the Arizona Supreme Court usually applied an unconstitutional nexus test. It provides a long string citation in an attempt to prove its point. Op. at 815-16. But the Arizona Supreme Court did not even apply an invalid nexus test in many of the cases the majority cites. The majority cites two cases where we have already held on habeas review that the Arizona Supreme Court did not commit Eddings error.[31] Indeed, as the majority recognizes, we have found there was no Eddings error in six additional cases during the relevant time period.[32] Id. at 818. The majority cites other cases where a federal district court has held there was no Eddings error and appeal is pending.[33] Id. at 815-16. The majority also cites cases as examples of Eddings error where the Arizona Supreme Court gave little weight to mitigation evidence because there was no nexus between that evidence and the murder.[34] Id. at 33. But giving little or no weight to *844 such evidence as a factual matter is perfectly permissible under Eddings. See, e.g., Lopez, 680 F.3d at 1204. Finally, the two cases upon which the majority most heavily relies, State v. Djerf, 191 Ariz. 583, 959 P.2d 1274 (1998), and State v. Hoskins, 199 Ariz. 127, 14 P.3d 997 (2000), came years after the Arizona Supreme Court affirmed McKinney’s sentence. See op. at 814-15.
A close review of the majority’s string cite shows that, at worst, the Arizona Supreme Court sometimes misapplied Ed-dings in the years before that court affirmed McKinney’s sentence. See, e.g., Ross, 886 P.2d at 1363; State v. Wallace, 160 Ariz. 424, 773 P.2d 983, 986 (1989). It is for that reason that we have always rejected the majority’s conclusion that the Arizona Supreme Court consistently applied an unconstitutional nexus test during this time period.[35] As a result, we have always rejected the argument that the Arizona Supreme Court’s prior mistakes in this area are relevant to the decision before us.[36] In fact, we have specifically rejected the argument that the Arizona Supreme Court is not entitled to the Vis-ciotti presumption in Eddings cases. See Poyson v. Ryan, 743 F.3d 1185, 1198 (9th Cir.2013). The majority today overrules these precedents sub silentio, and concludes Arizona is not entitled to the Vis-ciotti presumption because Arizona has on occasion misapplied Eddings before.
The majority’s response to the eases involving Eddings compliance reveals its view of the Arizona courts: No matter what the Arizona courts say, they never really considered all of the mitigation evidence. See op. at 823-27. For example, we previously held in Lopez that Arizona complied with Eddings during this time period and relied in part on three cases for that conclusion. See Lopez, 630 F.3d at 1204 n. 4 (citing State v. Trostle, 191 Ariz. 4, 951 P.2d 869 (1997); State v. Mann, 188 Ariz. 220, 934 P.2d 784 (1997); State v. Medrano, 185 Ariz. 192, 914 P.2d 225 (1996)). The majority gets around those cases by disregarding the parts of the cases that show the Arizona Supreme Court quite understood and applied Etidings’s mandate.[37] Op. at 825-26. The majority similarly gives short shrift to *845 State v. Thornton, 187 Ariz. 325, 929 P.2d 676 (1996), and State v. Gonzales, 181 Ariz. 502, 892 P.2d 838 (1995).[38] Op. at 824-25.
The majority is grasping at straws. First, the majority has flipped the presumption to require us to presume the Arizona courts violated Eddings. No law or case is cited for this proposition. Second, those cases demonstrate compliance with Eddings sufficient to rebut this newly created flipped presumption. Look at Gonzales. There, the Arizona Supreme Court explained that “[i]n capital sentencing proceedings, the trial court must consider the mitigating factors in [Ariz.Rev. Stat.] § 13-703(G) as well as any aspect of the defendant’s background or the offense relevant to determining whether the death penalty is appropriate.” Gonzales, 892 P.2d at 850 (emphasis added). The court later noted:
*846 From the detailed special verdict, it is clear that the trial court considered all evidence offered in mitigation. He was required to do no more. See Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (applying the rule in Lockett v. Ohio that the “sentencer in capital punishment cases must be permitted to consider any relevant mitigating factor”).
Id. at 851. Does that not show the Arizona Supreme Court here complied with Eddings ? What else could the court have done to overcome the majority’s flipped presumption?
In short, the majority’s response to those cases showing compliance with Ed-dings is nothing short of an act of contortion. See op. at 823-27. It cannot escape the fact that the Arizona Supreme Court applied Eddings correctly during the relevant time period. As a result, there is no reason to invert the presumption that the Arizona courts knew and followed the law into a presumption they did not.
2.
After freeing itself from the presumption that state courts know and follow the law, the majority engages in de novo review and concludes the Arizona courts here applied an unconstitutional nexus test. Id. at 819-21. As I have shown, even a de novo review shows there was no Eddings error. The majority reaches the opposite conclusion largely by selectively reading — better said, misreading — the record.
To start, the majority states that the Arizona Supreme Court accepted Judge Sheldon’s conclusions, at pages 28 and 29 of the sentencing transcript, that McKinney’s PTSD did not affect his state of mind at the time of the murders and, in any event, would have influenced him not to commit the murders. Id. at 819-21. The majority suggests this part of the sentencing colloquy “echoes” the Arizona Supreme Court’s nexus test and implies these statements show the court applied a nexus test to exclude McKinney’s PTSD evidence from consideration under the nonstatutory mitigation factor. Id. at 809-11, 819-21. But the majority admits these statements are directed to Judge Sheldon’s analysis of the statutory mitigating factors, which, as I have explained, is the correct understanding. Id. at 809-10. So, even if the Arizona Supreme Court accepted Judge Sheldon’s conclusion that there was no causal connection between McKinney’s PTSD and the murders, there was no error.
Moreover, the majority’s analysis rests on an assumption that the Arizona Supreme Court accepted a single factual finding by Judge Sheldon and ignored the rest of Judge Sheldon’s sentencing colloquy. As I have already explained, the Arizona Supreme Court did not rely on any of Judge Sheldon’s factual conclusions.[39] But if the Arizona Supreme Court did accept any of Judge Sheldon’s findings regarding McKinney’s-mitigation evidence, it accepted all of them. See McKinney, 917 P.2d at 1234 (“[T]he record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood, specifically the diagnosis of post-traumatic stress disorder.” (emphasis added)); id. *847 (“The record clearly shows that the judge considered McKinney’s abusive childhood and its impact on his behavior and ability to conform his conduct.” (emphasis added)).[40] The majority’s selective reading of Judge Sheldon’s analysis is therefore wrong on multiple levels. It is also irrelevant to the outcome of the case. That the Arizona Supreme Court may have accepted Judge Sheldon’s conclusion that the evidence showed McKinney’s PTSD did not affect his conduct does not show Ed-dings error. To violate Eddings the court must have excluded the evidence from consideration altogether because of the lack of a nexus.
The rest of the majority’s evaluation of the Arizona Supreme Court’s decision is just as flawed. The majority first asserts, citing Djerf for support, that the Arizona Supreme Court did not really consider McKinney’s PTSD evidence even though it used the word “considering.” Op. at 820. That is nonsense. The referenced case, Djerf, came two years after McKinney’s appeal. See Djerf, 959 P.2d at 1274. It is irrelevant to the Arizona Supreme Court’s decision in this case.
Next, the majority conclusorily asserts that the Arizona Supreme Court “recited its unconstitutional causal nexus test.” Op. at 810, 820, 827. It did? If the Arizona Supreme Court recited a causal-nexus test, then why would the majority need so many pages to reach the conclusion that the court did, in fact, apply a causal-nexus test? It appears the majority believes the following to be an unconstitutional nexus test;
[A] difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant’s ability to perceive, comprehend, or control his actions.
McKinney, 917 P.2d at 1234 (emphasis added). Not so. As I have noted, this statement means that when a difficult background does affect the “defendant’s ability to perceive, comprehend, or control his actions,” it has “substantial mitigating weight.” But when there is no such effect, the evidence does not necessarily have substantial mitigating weight, but it can have such weight. For that reason, I am at a loss to understand the majority’s conclusion that the Arizona Supreme Court recited an unconstitutional nexus test.
Finally, the majority relies on the Arizona Supreme Court’s citation to Ross. See op. at 819-21; Ross, 886 P.2d at 1363. Visciotti forecloses any reliance on the *848 citation to Ross to find Eddings error.[41] But even if we looked at the Arizona Supreme Court’s citation to Ross without the Visciotti presumption, we should conclude that court applied Eddings correctly. The court correctly stated Eddings’s requirements several times. See McKinney, 917 P.2d at 1226-27,1234. The majority’s reliance on that citation, rather than the words the Arizona Supreme Court actually used, demonstrates the majority is applying the flipped presumption it references elsewhere in its opinion.[42] See op. at 803-04, 823-27.
In short, none of the reasons the majority relies on support its conclusion that the Arizona Supreme Court misapplied Ed-dings.
IV. The Harmless-Error Analysis
The majority’s final mistake comes in its harmless-error analysis.[43] Habeas petitioners “are not entitled to habeas relief based on trial error unless they can establish that it resulted in ‘actual prejudice.’ ” Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (citation omitted). We can grant habeas relief only if we have “grave doubt about whether a trial error of federal law had ‘substantial and injurious effect or influence in determining the [sentencer’s] verdict.’ ” O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (citation omitted). There must be more than a “reasonable possibility” that an error was harmful. Brecht, 507 U.S. at 637, 113 S.Ct. 1710. Anything less puts the state to the “arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error.” Calderon v. Coleman, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam). Here, would lack of consideration of McKinney’s PTSD cause us to have “grave doubt” that Judge Sheldon would have imposed the death sentence? No.
Judge Sheldon found the prosecution established four aggravating factors, two as to each of the murders. See Ariz.Rev.Stat. *849 § 13-751(F)(1), (5)-(6). First, Judge Sheldon found McKinney committed not one, but two murders, ie., the murders of Mer-tens and McClain. Second, he found Mer-tens was murdered “in an especially heinous, cruel or depraved manner.” For that finding, Judge Sheldon credited testimony that McKinney admitted to his father that he shot Mertens. Judge Sheldon then explained the evidence at trial “showed that [Mertens] struggled violently to survive before being killed by a shot to the head.” There were numerous “nonfatal wounds” and a “substantial amount of blood over large areas of [Mertens’s] body, and the house, the bottom of her shoes, her slippers, which suggests that a struggle occurred while she was conscious.” He concluded it was reasonable to assume Mertens “suffered tremendous physical torment prior to her death.” The murder was therefore “cruel.” At the very least, Judge Sheldon found the “violence was gratuitous” and “clearly” unnecessary, which supported a finding that McKinney’s state of mind was “heinous and depraved.” Finally, Judge Sheldon found McKinney committed both murders with the expectation that they would lead to pecuniary gain. The Arizona Supreme Court did not disturb any of these findings on direct appeal. McKinney, 917 P.2d at 1233-34.
The majority opinion treats these aggravating factors as an afterthought. See op. at 823-24. It daintily elides a description of the facts by which the murders were committed. Yet the majority claims to have conducted a harmless-error analysis without giving the aggravating factors “short shrift.” See id. Properly considered, these factors show the alleged failure to consider McKinney’s PTSD, had it occurred, would have been harmless. As McKinney’s expert admitted, there was no evidence that McKinney’s PTSD affected McKinney’s state of mind at the time of the murders. And Judge Sheldon found there was no link. Had Judge Sheldon not considered the PTSD diagnosis, forcing him to do so would not have altered the result. He would have given the PTSD diagnosis little weight (indeed, he did give it little weight).
The evidence of McKinney’s childhood was much more compelling than his PTSD. As the majority thoroughly outlines, the evidence showed McKinney’s childhood was horrible. Id. at 804-08. But that only bolsters the conclusion that the Arizona courts’ alleged failure to consider McKinney’s PTSD was harmless. If McKinney’s horrific childhood was not enough to justify leniency, then why would McKinney’s resulting PTSD, which had no effect on McKinney at the time of the murders, have changed anything? I suppose it is possible that McKinney’s PTSD would have nudged Judge Sheldon across the line to leniency on the supposition that “anything is possible”; but that is not the test for harmless error. “Possibility” does not mean “grave doubt” that the failure to consider the PTSD had a “substantial and injurious effect or influence in determining [his] verdict.” O’Neal, 513 U.S. at 436,115 S.Ct. 992. The brutal nature of the Mer-tens murder, the finding that McKinney committed the two murders for pecuniary gain, and the fact that McKinney had committed multiple murders all weigh heavily in favor of the death penalty. The failure to consider the marginal mitigating weight of McKinney’s PTSD could not have affected the outcome. McKinney has not shown “actual prejudice,” and thus any error in McKinney’s sentencing was harmless.
The majority’s application of § 2254(d)(1) will have far-reaching effects beyond this case. Most immediately, the opinion potentially undermines every Arizona death sentence between 1989 and *850 2005. If we cannot find the Arizona Supreme Court complied with Eddings in this case, where it stated the Eddings standard correctly and made explicit findings that illustrate it observed Eddings to avoid error, then I don’t quite see how future cases could come out differently. The ineluctable effect from today’s majority is that, no matter what they said or did during this time period, Arizona courts violated Eddings. This is not idle speculation. The majority may have already passed judgment on two cases that are currently pending appeal before our court.[44]
Most importantly, the majority’s reliance on other Arizona Supreme Court cases will spread to all § 2254(d)(1) cases. Before today, we applied the correct standard under § 2254(d)(1). See, e.g., Elmore v. Sinclair, 781 F.3d 1160, 1168 (9th Cir.2015). After today, three-judge panels must abandon the correct standard and apply not the deference the Supreme Court instructs, but the majority’s analysis. See generally Miller v. Gammie, 335 F.3d 889 (9th Cir.2003) (en banc). We will be flooded with string citations claiming to show how state appellate courts have misapplied the federal Constitution in past cases. And petitioners will rely on those cases to argue we cannot presume those courts applied the law correctly. This cannot be how AEDPA operates, which this court recognized when it previously rejected the arguments the majority revives today.
I conclude by noting that, today, we once again misapply AEDPA. But we do so only in this case. In our future cases, the Supreme Court should not presume we always misapply AEDPA because of today’s decision or because of prior reversals in this area. That is, one hopes the Supreme Court will not apply a past performance test to us similar to that which the majority opinion applies to the Arizona Supreme Court.
I respectfully dissent.

. Ariz.Rev.Stat. § 13-751(G)(1).

. Ariz.Rev.Stat. § 13-751(G) ("The trier of fact shall consider as mitigating circumstances any factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant’s character, propensities or record and any of the circumstances of the offense.”).

. State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1226 (1996).

. Id. at 1234 (emphasis added).

. Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

. Parker v. Dugger, 498 U.S. 308, 314, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

. Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (citation omitted).

. Op. at 802-04, 812-18.

. See Lopez v. Ryan, 630 F.3d 1198, 1203-04 (9th Cir.2011) ("Some cases decided prior to Tennard applied a causal nexus requirement in an impermissible manner. Other cases, however, properly looked to causal nexus only as a factor in determining the weight or significance of mitigating evidence.”); Poyson v. Ryan, 743 F.3d 1185, 1198 (9th Cir.2013); Towery v. Ryan, 673 F.3d 933, 946 (9th Cir.2012) (per curiam).

. For a more accurate relation of the relevant Arizona Supreme Court cases, see infra Section III.B.l.

. See Lopez, 630 F.3d at 1203-04 (“In light of this backdrop, which highlights a range of treatment of the nexus issue, there is no reason to infer unconstitutional reasoning from judicial silence. Rather, we must look to what the record actually says.”); Clabourne v. Ryan, 745 F.3d 362, 372-73 (9th Cir.2014), petition for rehearing and rehearing en banc pending, No. 09-99022 (9th Cir. Mar. 18, 2014); Poyson, 743 F.3d at 1198 n. 7; Schad v. Ryan, 671 F.3d 708, 723-24 (9th Cir.2011); Greenway v. Schriro, 653 F.3d 790, 807-08 (9th Cir.2011).

. Op. at 803.

. See id.

. Id. at 809-10, 819-20.

. Id. at 810, 820-21, 827.

. Id.

. Visciotti, 537 U.S. at 22-24, 123 S.Ct. 357; Parker, 498 U.S. at 314-16, 111 S.Ct. 731.

. See Claboume, 745 F.3d at 372-73, petition for rehearing and rehearing en banc pending, No. 09-99022 (9th Cir. Mar. 18, 2014); Poy- *830 ión, 743 F.3d at 1198 & n. 7; Schad, 671 F.3d at 723-24; Greenway, 653 F.3d at 807-OS; Lopez, 630 F.3d at 1203-04.

. Arizona renumbered the statute in 2009, and it is now codified without any changes at Ariz.Rev.Stat. § 13-751. See, e.g., Robinson v. Schriro, 595 F.3d 1086, 1111 (9th Cir.2010). This dissent cites to the new location of the statute.

. Early in its opinion, the majority admits that this language is directed to McKinney's argument for leniency under the statutory Mental Capacity Factor. Op. at 809. The majority nonetheless suggests these statements also show Judge Sheldon applied an unconstitutional nexus test. Id. at 809-10, 819-20. As I discuss in detail below, at this point in the sentencing colloquy, Judge Sheldon is addressing the statutory mitigating factors and only the statutory mitigating factors. See infra Section III.A.2.

. This was the 27-page, 11-part sentencing memorandum, which Judge Sheldon specifically cited by date during his sentencing colloquy.

. A sentencer is free to assign whatever weight, including no weight, that mitigating evidence deserves under the facts of the case, as long as the sentencer does not exclude ‘ from his consideration relevant mitigating evidence as a matter of law. See, e.g., Towery, 673 F.3d at 945 (“One could question the wisdom of the Arizona Supreme Court’s decision to accord Towery’s evidence little or no weight.... However, the court’s reasoned and individualized decision to give Towery’s evidence little or no weight was not contrary to Supreme Court precedent.”); Allen v. Buss, 558 F.3d 657, 667 (7th Cir.2009) ("The rule of Eddings is that a sentencing court may not exclude relevant mitigating evidence. But of course, a court may choose to give mitigating evidence little or no weight.” (citation omitted)); United States v. Johnson, 495 F.3d 951, 965 (8th Cir.2007) ("[J]urors are obliged to consider relevant mitigating evidence, but are permitted to accord that evidence whatever weight they choose, including no weight at all.”).

. The majority’s error in reviewing Judge Sheldon’s colloquy as part of the ‘.'last reasoned decision” makes no difference. To dispel any doubts, as I explain below, the record shows both the Arizona Supreme Court and Judge Sheldon complied with Eddings even under a de novo review — which is the wrong standard under AEDPA. See infra Section III.

. The majority’s faulty understanding of the Arizona Supreme Court’s opinion leads it to conclude that I am wrong to apply § 2254(d)(2) in this case. Op. at 826-27. We previously used § 2254(d)(2) in habeas review of Arizona death sentences, see Towery, 673 F.3d at 945 n. 4; Lopez, 491 F.3d at 1037-38 & n. 2, as did Judge Wardlaw — who joins the *836 majority opinion — in her partial dissent to the original panel opinion in this case, see McKinney v. Ryan, 730 F.3d 903, 925-27 (9th Cir.2013) (Wardlaw, J., dissenting in part). The majority’s disagreement on this point creates a circuit split with at least two other circuits. See Corcoran v. Neal, 783 F.3d 676, 685-87 (7th Cir.2015); Quince v. Crosby, 360 F.3d 1259, 1267 (11th Cir.2004).

. The majority’s incorrect standard is dealt with later. See infra Section III.B.

. Petitioner Visciotti made the point that the “reasonably probable” standard was an easier standard of proof for him to meet than the plain "probable.” Visciotti v. Woodford, 288 F.3d 1097, 1108-09 (9th Cir.2002).

. The exhibits are not in the parties’ excerpts of record, but they are discussed during the sentencing hearing.

. It was only in Part VIII of the sentencing memorandum that McKinney argued the causal relationship — “nexus”—between his PTSD and his criminal conduct.

. Nor was McKinney entitled to a "specific listing and discussion of each piece of mitigating evidence under federal constitutional law.” See Jeffers, 38 F.3d at 418 ("While 'it is important that the record on appeal disclose to the reviewing court the considerations which motivated the death sentence/ ‘due process does not require that the sentencer exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant.’ ” (citation omitted) (quoting Gardner v. Florida, 430 U.S. 349, 361, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion); Jeffries v. Blodgett, 5 F.3d 1180, 1197 (9th Cir.1993))).

.McKinney also argues the Arizona Supreme Court and Judge Sheldon failed to consider his horrific childhood in violation of Eddings. The majority does not address that claim, but the record makes clear that Judge Sheldon considered that evidence too. He listened to lengthy testimony about it; he mentioned it several times in his colloquy; and he expressly stated: “I agree that there was evidence of a difficult family history by the defendant. However, as I’ve indicated, I do not find that is a substantial mitigating factor or that there was any evidence that linked that in any way to demonstrate that somehow significantly impaired the defendant’s capacity to understand the wrongfulness of his conduct.” (Emphasis added.) *842 Just like the PTSD evidence, Judge Sheldon considered McKinney’s childhood both as to its effect on McKinney at the time of the crimes and independently from any effect it may have had. The Arizona Supreme Court confirmed Judge Sheldon properly considered that evidence: "|T]he record shows that the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood.” McKinney, 917 P.2d at 1234.

. See State v. Towery, 186 Ariz. 168, 920 P.2d 290, 310-11 (1996), habeas relief denied in Towery, 673 F.3d at 944-47; State v. Stokley, 182 Ariz. 505, 898 P.2d 454, 473 (1995), habe-as relief denied in part in Stokley v. Ryan, 705 F.3d 401, 404 (9th Cir.2012) (explaining that "on balance, the Arizona Supreme Court’s opinion suggests that the court did weigh and consider all the evidence presented in mitigation at sentencing”).

. Hedlund v. Ryan, 750 F.3d 793, 818 (9th Cir.2014); Murray v. Schriro, 746 F.3d 418, 455 (9th Cir.2014); Clabourne, 745 F.3d at 371-74, petition for rehearing and rehearing en banc pending, No. 09-99022 (9th Cir. Mar. 18, 2014); Poyson, 743 F.3d at 1196-1200; Schad, 671 F.3d at 722-26; Lopez, 630 F.3d at 1203-04.

. See State v. Martinez, 196 Ariz. 451, 999 P.2d 795 (2000), habeas relief denied in Martinez v. Schriro, No. CV-05-1561-PHX-EHC, 2008 WL 783355, at *33 (D.Ariz. Mar. 20, 2008), appeal pending sub nom. Martinez v. Ryan, No. 08-99009 (9th Cir. May 29, 2008); State v. Rienhardt, 190 Ariz. 579, 951 P.2d 454 (1997), habeas relief denied in Rienhardt v. Ryan, 669 F.Supp.2d 1038, 1059-60 (D.Ariz.2009), appeal pending, No. 10-99000 (9th Cir. Jan. 8, 2010).

. State v. Jones, 185 Ariz. 471, 917 P.2d 200, 219 (1996) ("A difficult family background is *844 not necessarily a mitigating circumstance unless defendant can show that something in his background had an effect on his behavior that was beyond his control.” (emphasis added)); State v. Bible, 175 Ariz. 549, 858 P.2d 1152, 1209 (1993) ("In sum, our independent review of the record shows no significant mitigating evidence.” (emphasis added)).

. See Poyson, 743 F.3d at 1198; Towery, 673 F.3d at 946; Lopez, 630 F.3d at 1203-04.

. See Poyson, 743 F.3d at 1198 n. 7 ("We reject the suggestion that because other Arizona cases may have involved causal nexus error we should presume that this case did as well.”); see also Claboume, 745 F.3d at 372-73, petition for rehearing and rehearing en banc pending, No. 09-99022 (9th Cir. Mar. 18, 2014); Schad, 671 F.3d at 723-24 (finding the Arizona Supreme Court did not apply an un- • constitutional nexus test in an opinion filed eight months after the court’s Wallace decision); Greenway, 653 F.3d at 807-08; Lopez, 630 F.3d at 1203-04.

.These cases show the Arizona Supreme Court understood that Eddings requires consideration of non-nexus mitigation evidence but that the sentencing court retains discretion over how much weight, if any, to afford such evidence. In Trostle, the Arizona Supreme Court explicitly discussed Eddings’s mandate and concluded, “In considering evidence of mental impairment, our primary task is to determine its mitigating weight, if any.” 951 P.2d at 885-86. The court expressly considered numerous pieces of non-nexus mitigating evidence: Trostle’s cooperation with the police, past drug and alcohol abuse, good conduct during trial, loving family relationships, ability to function well in a structured environment, lack of a prior felony conviction, and remorse. Id. at 887. The Arizona Supreme Court noted that the trial *845 court should have considered such evidence and factored the evidence into its independent reweighing of the aggravating and mitigating factors. Id. at 887-88. The court reduced Trostle's death sentence to life imprisonment. Id. at 888.
In Mann, the Arizona Supreme Court reviewed four pieces of non-nexus mitigating evidence and found Mann did not "establish[ ] mitigation of sufficient weight to call for leniency.” 934 P.2d at 795. The majority concedes that the Arizona Supreme Court considered, but gave little weight to, two pieces of non-nexus mitigating evidence: Mann's relationship with his children and a change in Mann’s lifestyle post-dating his crimes. Op. at 825-26. The majority contends, however, that the court "held that defendant’s difficult family background was irrelevant as a matter of law.” Id. at 825. The Arizona Supreme Court did no such thing. It stated "[a]n abusive family background is usually given significant weight as a mitigating factor only when the abuse affected the defendant’s behavior at the time of the crime.” Mann, 934 P.2d at 795 (emphasis added). This statement is entirely consistent with Eddings: It shows the court understood it could ascribe Mann’s family background the mitigating weight it deserves. Cf. supra Section III.A.l. The majority also contends Mann’s citation to WaZ-lace shows the Arizona Supreme Court applied an unconstitutional causal-nexus test to Mann’s evidence of a troubled family background. Op. at 825-26. However, the court also cited a case in which it did not ascribe "much weight” to the defendant's "difficult family background,” which is entirely consistent with Eddings. See Mann, 934 P.2d at 795 (citing State v. West, 176 Ariz. 432, 862 P.2d 192, 211-12 (1993), overruled on other grounds by State v. Rodriguez, 192 Ariz. 58, 961 P.2d 1006 (1998)).
In Medrano, the Arizona Supreme Court reviewed Medrano’s cocaine use both as a statutory mitigating factor and as a nonstatu-tory mitigating factor. 914 P.2d at 227-29. The court found Medrano's cocaine use did not qualify as a statutory mitigating factor under Ariz.Rev.Stat. § 13-751(G)(1) because Medrano failed to prove his cocaine use significantly impaired his ability to conform his conduct to the law or appreciate the wrongfulness of his actions. Id. at 228. The Arizona Supreme Court acknowledged it was required to consider Medrano’s cocaine use regardless any causal connection, but found Medrano's cocaine use unpersuasive as mitigating evidence. Id. at 229 (citing State v. Ramirez, 178 Ariz. 116, 871 P.2d 237, 252 (1994) ("[A]lthough [courts] must consider all evidence offered in mitigation, they are not bound to accept such evidence as mitigating.” (alterations in original))). The court then noted that the trial court, consistent with Ed-dings, rejected Medrano’s "claim that cocaine intoxication, under these facts, is sufficiently mitigating to call for leniency.” Id.; see also id. ("Judges are presumed to know and follow the law and to consider all relevant sentencing information before them.”).

. The majority takes issue with Thornton’s citation to Ross, op. at 825, but ignores that the citation to Ross is for a point that is irrelevant to the majority’s analysis. See Thornton, 929 P.2d at 686 ("Thornton argues that his cooperation with law enforcement is a mitigating factor. Thornton’s admission of guilt after he was stopped and his offer to admit guilt in exchange for the state withdrawing the request for the death penalty furthered his own interest. Cooperation that is in the best interest of the accused is not a mitigating circumstance. State v. Ross.... ”).

. The Arizona Supreme Court merely reviewed whether Judge Sheldon considered all of McKinney’s mitigation evidence, found "[t]he record clearly shows that the judge considered McKinney's” mitigation evidence, and concluded, "On this record there was no error.” McKinney, 917 P.2d at 1234. It did not accept Judge Sheldon’s factual findings as part of its own review of McKinney’s sentence.

. During Hedlund’s sentencing colloquy, Judge Sheldon specifically cited to Eddings and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and explained those cases required him to "weigh carefully, fairly, objectively, all of the evidence offered at sentencing, recognizing that not everyone who commits murder should be put to death.” Hedlund v. Ryan, 750 F.3d 793, 816 (9th Cir.2014). Judge Sheldon then considered Hedlund’s alcohol abuse: "The Court has concluded that although evidence of alcohol use [is not] a mitigating circumstance under (G)(1), [it] nevertheless should be considered as mitigating evidence." (Emphasis added.) Judge Sheldon later reiterated that point: "The defendant's dependent personality traits, his past drug and alcohol abuse, and child abuse have been considered by the Court. If not demonstrating the existence of the mitigating factors under (G)(1), they have nevertheless been given consideration by the Court." (Emphasis added.) He then concluded with a discussion of Hedlund's childhood evidence: "I have considered [that evidence]. I think it is the court’s obligation to consider, whether or not it complies with the requirements in (G)(1)." (Emphasis added.) The majority fails to explain why the Arizona Supreme Court ignored this discussion even though the court reviewed Hedlund’s and McKinney’s death sentences in the same opinion.

. To that end, the majority implicitly overrules our prior en banc decision where we held a citation to a suspect case does not show the Arizona court misapplied Eddings. See Jeffers, 38 F.3d at 415.

. The majority claims that a single citation to Ross in the Arizona Supreme Court's opinion renders the court's treatment of McKinney's mitigating evidence suspect. Op. at 819-21. By that logic, a citation to Eddings, Lockett, Eddings’s precursor, or State v. McMurtrey, 136 Ariz. 93, 664 P.2d 637 (1983), an Arizona Supreme Court case the majority acknowledges applies Eddings correctly, should demonstrate compliance with Eddings. See, e.g., State v. Canez, 202 Ariz. 133, 42 P.3d 564, 593 (2002) (citing Lockett and McMur-trey); State v. Sharp, 193 Ariz. 414, 973 P.2d 1171, 1183 (1999) (citing Lockett); Trostle, 951 P.2d at 885-86 (citing Lockett and McMurtrey); Towery, 920 P.2d at 311 n. 2 (citing Eddings and Lockett); Gonzales, 892 P.2d at 851 (citing Eddings, Lockett, and McMurtrey); Bible, 858 P.2d at 1209 (citing McMurtrey); State v. Brewer, 170 Ariz. 486, 826 P.2d 783, 802 (1992) (citing McMurtrey); State v. White, 168 Ariz. 500, 815 P.2d 869, 889 (1991) (citing Lockett); State v. Walton, 159 Ariz. 571, 769 P.2d 1017, 1034 (1989) (citing Lockett).

.I agree that Eddings error is not structural and is instead subject to harmless-error analysis, as we have already recognized. Henry v. Ryan, 720 F.3d 1073, 1089 (9th Cir.2013). Indeed, most circuits have held Eddings error is not structural. See Campbell v. Bradshaw, 674 F.3d 578, 596 (6th Cir.2012); McGehee v. Norris, 588 F.3d 1185, 1197 (8th Cir.2009); Ferguson v. Sec’y of Dep’t of Corr., 580 F.3d 1183, 1201 (11th Cir.2009); Martini v. Hendricks, 348 F.3d 360, 371 (3d Cir.2003); Bryson v. Ward, 187 F.3d 1193, 1205-06 (10th Cir.1999); Boyd v. French, 147 F.3d 319, 327-28 (4th Cir.1998); Williams v. Chrans, 945 F.2d 926, 949 (7th Cir.1991). But see Nelson v. Quartennan, 472 F.3d 287, 314 (5th Cir.2006) (en banc) (finding Eddings error to be structural).

. See Martinez, 2008 WL 783355, at *33, appeal pending sub nom. Martinez v. Ryan, No. 08-99009 (9th Cir. May 29, 2008); Rien-hardt, 669 F.Supp.2d at 1059-60, appeal pending, No. 10-99000 (9th Cir. Jan. 8, 2010).